G. Hopkins Guy, III (CA Bar No. 124811)
**BAKER BOTTS L.L.P.**
1001 Page Mill Road
Building One, Suite 200
Palo Alto, CA 94304
Telephone: (650) 739-7500
hop.guy@bakerbotts.com

[additional counsel on signature page]

*Attorneys for Plaintiffs DISH Network L.L.C. and Sling TV L.L.C.*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DISH NETWORK L.L.C., AND SLING TV L.L.C., <br> *Plaintiffs*, | Case No. _____ |
| v. | **COMPLAINT FOR DECLARATORY JUDGMENT** |
| ADEIA INC., ADEIA GUIDES INC., ADEIA MEDIA HOLDINGS INC., ADEIA MEDIA HOLDINGS LLC, ADEIA TECHNOLOGIES INC., AND ADEIA MEDIA SOLUTIONS INC., <br> *Defendants*. | **JURY TRIAL DEMANDED** |

Plaintiffs DISH Network L.L.C. and Sling TV L.L.C. (collectively "DISH") for its Complaint for Declaratory Judgment against Defendants Adeia Inc., Adeia Guides Inc., Adeia Media Holdings Inc., Adeia Media Holdings LLC, Adeia Technologies Inc., and Adeia Media Solutions Inc. (collectively "Adeia"), with knowledge as to its own acts and status, and upon information and belief as to the acts and status of others, by and through its undersigned counsel, alleges as follows:

## NATURE OF THE ACTION

1. This is an action for declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, and the Patent Laws of the United States, 35 U.S.C. § 1 *et seq*. DISH seeks a declaratory judgment of noninfringement of each of U.S. Patent Nos. 10,506,010 (the "'010 Patent"), 11,778,245 (the "'245 Patent"), 10,110,961 (the "'961 Patent"), 9,715,334 (the "'334 Patent"), and 8,156,528 (the "'528 Patent"). DISH further seeks a declaratory judgment of unpatentability of each of U.S. Patent Nos. 8,601,526 (the "'526 Patent"), 8,640,165 (the "'165 Patent"), 8,234,668 (the "'668 Patent"), the '528 Patent, 12,301,922 (the "'922 Patent"), 8,805,418 (the "'418 Patent"), the '010 Patent, and the '334 Patent. These patents are collectively referred to herein as the "Patents-in-Suit."

2. Each of the Patents-in-Suit is owned by Adeia.

3. On information and belief, Adeia will contend that DISH requires a license to its media patent portfolio, including the Patents-in-Suit, because Adeia will contend that DISH infringes patents in the portfolio.

4. DISH does not have a license to the Patents-in-Suit as of April 1, 2026.

5. DISH does not infringe any valid and enforceable claims of the Patents-in-Suit, either currently or going forward.

6.　　An actual and justiciable controversy exists under at least 28 U.S.C. §§ 2201–2202 between DISH and Adeia as to whether DISH infringes any valid and enforceable claims of the Patents-in-Suit.

## THE PARTIES

7.　　Plaintiff DISH Network L.L.C. is a Colorado limited liability company with its principal place of business at 9601 S. Meridian Blvd., Englewood, CO 80112.

8.　　Plaintiff Sling TV L.L.C. is a Colorado limited liability company with its principal place of business at 9601 S. Meridian Blvd., Englewood, CO 80112.

9.　　On information and belief, Defendant Adeia Inc. is a Delaware corporation with its principal place of business at 3025 Orchard Parkway, San Jose, California 95134.

10.　　On information and belief, Defendant Adeia Guides Inc. (f/k/a Rovi Guides Inc.) is a Delaware corporation with its principal place of business at 3025 Orchard Parkway, San Jose, California 95134. On information and belief, Adeia Guides Inc. is a wholly owned subsidiary of Adeia Inc.

11.　　On information and belief, Defendant Adeia Media Holdings Inc. is a Delaware corporation, with a principal place of business at 3025 Orchard Parkway, San Jose, California 95134. On information and belief, Adeia Media Holdings Inc. is a wholly owned subsidiary of Adeia Inc.

12.　　On information and belief, Defendant Adeia Media Holdings LLC was a Delaware corporation, with a principal place of business at 3025 Orchard Parkway, San Jose, California 95134. On information and belief, Adeia Media Holdings LLC no longer exists and any rights held in any of the Patents-in-Suit have been transferred to Adeia Media Holdings Inc.

13.　　On information and belief, Defendant Adeia Technologies Inc. is a Delaware corporation with its principal place of business at 3025 Orchard Parkway, San

Jose, California 95134. On information and belief, Adeia Technologies Inc. is a wholly owned subsidiary of Adeia Inc.

14.     On information and belief, Defendant Adeia Media Solutions Inc. (f/k/a TiVo Solutions Inc.) is a Delaware corporation with its principal place of business at 3025 Orchard Parkway, San Jose, California 95134. On information and belief, Adeia Media Solutions Inc. is a wholly owned subsidiary of Adeia Media Holdings Inc.

## DEFENDANTS' CORPORATE PREDECESSORS

15.     On information and belief, Rovi Corporation ("Rovi") was a corporation existing under the laws of the State of Delaware. Further, on information and belief, Rovi was the parent corporation to Rovi Guides Inc. ("Rovi Guide").

16.     On information and belief, TiVo, Inc. ("TiVo") was a corporation existing under the laws of the State of Delaware. Further, on information and belief, TiVo was the parent corporation to TiVo Solutions Inc. ("TiVo Solutions").

17.     In or around 2016, Rovi announced that it completed its acquisition of TiVo and changed Rovi's name to TiVo Corporation. *See* Rovi to Acquire TiVo, Creating $3 Billion Entertainment Technology Leader, April 29, 2016 (accessible via https://investor.xperi.com/news/news-details/2016/Rovi-to-Acquire-TiVo-Creating-3-Billion-Entertainment-Technology-Leader/default.aspx). At the time of the merger, Rovi and TiVo reportedly had a worldwide portfolio of over 6,000 issued patents and pending applications. Both companies had monetized their intellectual property, with more than $3 billion in alleged combined IP licensing revenues and past damage awards.

18.     In or around June 2020, Xperi Holding Corp. ("Xperi Holding"), another corporation organized under the laws of Delaware, merged with TiVo Corporation to create "one of the industry's largest and most diverse intellectual property (IP) licensing platforms." *See* Xperi and TiVo Combine, December 19, 2019, (accessible via

COMPLAINT FOR DECLARATORY JUDGMENT

- 3 -

https://investor.xperi.com/news/news-details/2019/Xperi-and-TiVo-to-Combine-Creating-a-Leader-in-Consumer--Entertainment-Technology-and-IP-Licensing/default.aspx).

19.    In or around 2022, Xperi Holding announced the separation of Adeia from Xperi Holding, acknowledging Adeia as "the intellectual property (IP) business of Xperi." *See* Xperi Appoints Paul E. Davis as CEO of IP Licensing Business at Spinoff, May 25, 2022 (accessible via https://investors.adeia.com/news-releases/news-release-details/xperi-appoints-paul-e-davis-ceo-ip-licensing-business-spinoff).

## BACKGROUND

20.    DISH is a leading provider of pay-television services, offering satellite television (DBS) and streaming services to millions of subscribers nationwide. DISH's products and services include the Hopper and Joey set-top box systems, the Sling TV streaming platform, the DISH Anywhere application, and the Game Finder sports feature.

21.    DISH previously had a patent license with Adeia. As of April 1, 2026, DISH does not have a license with Adeia to the Patents-in-Suit.

## ADEIA'S CAMPAIGN AGAINST PAY-TELEVISION PROVIDERS

22.    Adeia's primary business is licensing its patent portfolio and "consequently" suing companies that refuse to take licenses. 2025 Form 10-K, Adeia, at 9 (accessible via https://investors.adeia.com/node/11661/html).

23.    According to its recent public investor disclosures, Adeia maintains a multi-million-dollar litigation budget of over $5 million per quarter dedicated to patent enforcement. Q3 2025 Earnings Release, Adeia (accessible via https://investors.adeia.com/static-files/df225425-aabe-4212-a534-03723f5ea007).

24. Each of Adeia and its predecessor entities (including Rovi) has a well-established history and practice of demanding that pay-television providers, and others within its target industries, license its patent portfolio and suing those that refuse.

25. For example, in 2021, Rovi sued VideoTron in Canada, stating "when commercial negotiations prove unsuccessful, as they have to date with Videotron, litigation becomes necessary to protect our valuable intellectual property." *See* Rovi Files New Patent Infringement Action Against Videotron in Canada, May 24, 2021 (accessible via https://adeia.com/press-release/rovi-files-new-patent-infringement-action-against-videotron-in-canada).

26. Later, in November 2024, Adeia filed a patent infringement suit against The Walt Disney Company and its affiliates ("Disney"), asserting infringement of six of its patents relating to media streaming and content delivery technology. *Adeia Techs. Inc. et al v. The Walt Disney Co. et al.*, Civ. No. 1-24-cv-01231 (D. Del. Nov. 7, 2024).

27. According to its CEO, Adeia filed suit against Disney because Adeia was "left with no choice but to defend our intellectual property from Disney's unauthorized use" and was "fully prepared to proceed through the entirety of the legal process." *See* Adeia Initiates Patent Infringement Litigation Against Disney, Nov. 4, 2025 (accessible via https://investors.adeia.com/news-releases/news-release-details/adeia-initiates-patent-infringement-litigation-against-disney).

28. Similarly, on November 3, 2025, Adeia filed a patent infringement suit against Advanced Micro Devices, Inc. ("AMD"), asserting infringement of ten patents.

29. Adeia's CEO stated that Adeia was "confident that pursuing this litigation [against AMD] is the right course of action to protect Adeia's inventions" and Adeia "remain[ed] fully prepared to pursue resolution of this matter through the courts to safeguard our rights[.]" *See* Adeia Initiates Patent Infringement Litigation Against AMD,

Nov 03, 2025 (accessible via https://investors.adeia.com/news-releases/news-release-details/adeia-initiates-patent-infringement-litigation-against-amd).

30.     Preceding those suits, TiVo (a predecessor to Adeia) sued DISH (then EchoStar Communications) in 2004 for patent infringement. The lawsuit lasted for seven years.

31.     Most recently, on December 29, 2025—allegedly two days before the expiration of an existing license agreement—DIRECTV, LLC filed a declaratory judgment action against Adeia in this Court, asserting noninfringement and invalidity of the same ten Patents-in-Suit at issue in this action. *See DIRECTV, LLC v. Adeia Inc. et al.*, No. 3:25-cv-11048, Dkt. 1 (N.D. Cal.) ("the DIRECTV DJ lawsuit").

32.     In its complaint, DIRECTV alleged that Adeia demanded that DIRECTV enter into a new license agreement and pay "very substantial royalties" for Adeia's patent portfolio. *Id.* ¶ 19.

33.     DIRECTV further alleged that Adeia "consistently informed DIRECTV that it would need a license to the Adeia patent portfolio" after the expiration of its existing agreement, and that Adeia gave DIRECTV no reason to doubt that it would pursue legal action if DIRECTV did not agree to a license. *See id.* ¶¶ 20, 23.

34.     DIRECTV alleged that Adeia would contend that DIRECTV infringes the Patents-in-Suit through two categories of products and services: (a) DIRECTV's streaming products and services, including its DIRECTV Stream platform, which delivers content to subscribers via over-the-top streaming; and (b) DIRECTV's MVPD products and services, including its Genie and Genie Mini set-top box systems, which provide satellite television with DVR, electronic program guide, and interactive features. *See id.* ¶¶ 24–26.

35. Adeia has also taken its own affirmative steps to validate that the Patents-In-Suit are amongst those that it would assert against companies that provide pay-television services and/or streaming products.

36. For example, in response to the DIRECTV DJ Lawsuit, Adeia filed a lawsuit in the Southern District of New York alleging misappropriation of trade secrets and breach of contract by DIRECTV because of the DIRECTV DJ Lawsuit. *See Adeia Inc. et al v. DirecTV, LLC*, No. 1:26-cv-00238 (S.D.N.Y.) (the "Adeia SDNY Suit").

37. By filing its public complaint in the Southern District of New York, Adeia has highlighted that the selection of the Patents-in-Suit (the same as those in the DIRECTV DJ Lawsuit) "reflected significant efforts and analysis" (Adeia SDNY Suit, Dkt. No. 1, ¶ 54) and "derive[s] independent economic value" (Adeia SDNY Suit, Dkt. No. 1, ¶ 50).

38. In the Adeia SDNY Suit, Adeia pleaded that the specific selection of these ten patents is the result of "hundreds of hours" (Adeia SDNY Suit, Dkt. No. 1, ¶ 47) and "hundreds of pages of Adeia's confidential analysis" (Adeia SDNY Suit, Dkt. No. 1, ¶ 31).

39. Adeia has not requested that any portion of the DIRECTV DJ Lawsuit be sealed.

40. Consequently, DISH relies solely on publicly available information, including the patent list identified in the DIRECTV DJ Lawsuit—information that has become generally known through Adeia's own litigation choices and whose "independent economic value" Adeia has acknowledged in the Adeia SDNY Suit.

41. Also in the Adeia SDNY Action pleadings, Adeia asserted that the identification of the ten Patents-in-Suit is so targeted that, without such information, a litigant "would have had to guess which patents to include in any declaratory relief action." Adeia SDNY Suit, Dkt. No. 1, ¶ 50.

42.     Adeia further admitted that keeping the "internal analysis" of these specific patents a secret provided value by avoiding "litigation risk" and "avoided lawsuit[s]." *Id.*

43.     On information and belief—and based on Adeia's representation that the patents in the DirecTV lawsuit were selected based on "Adeia's selection and identification of [at least the Patents-in-Suit]" (Adeia SDNY Suit, Dkt. No. 1, ¶ 46)—Adeia has already performed the "depth and extent of infringement analysis" required to create a "substantial controversy... of sufficient immediacy and reality" to warrant declaratory relief here. *Apple Inc. v. VoIP-Pal.com, Inc.*, 506 F. Supp. 3d 947, 967–68 (N.D. Cal. 2020); *see also* DIRECTV DJ Suit, Dkt. No. 38, 6, 9 (Mot. to Dismiss citing *Apple Inc. v. VoIP-Pal.com*).

44.     By Adeia's own admission, these ten patents are not cherry-picked at random, but are the specific assets selected after Adeia spent hundreds of hours and hundreds of pages identifying patents that would be most applicable to DIRECTV and, consequently, DIRECTV's direct-competitor DISH.

45.     Thus, on information and belief and through Adeia's representations, Adeia has undertaken its own affirmative steps to validate that the Patents-In-Suit are amongst those that it would assert against companies that provide pay-television services and/or streaming products, such as DirecTV and DISH.

46.     Additionally, on June 27, 2024—three days before the expiration of its license agreement with Adeia—Altice USA, Inc. filed a declaratory judgment action against Adeia in the Southern District of New York, asserting noninfringement of ten Adeia patents, several of which overlap with the Patents-in-Suit. *See Altice USA, Inc. v. Adeia Inc. et al.*, No. 1:25-cv-05390 (S.D.N.Y.). Altice alleged that Adeia sent claim charts setting forth element-by-element infringement contentions and conditioned license renewal on those infringement allegations. *See id.*, Dkt. No. 1, ¶¶ 22–23.

47.    Thus, Adeia has a regular, established, and ongoing pattern of enforcing the Patents-in-Suit.

48.    DISH provides products and services in the same pay-television market as those accused in the DIRECTV action.

49.    For example, according to an article published on DIRECTV's website, DISH's Sling TV streaming platform provides over-the-top streaming services to subscribers, similar to DIRECTV Stream. DIRECTV vs. Sling: Compare Live TV Streaming Services, March 16,2026 (accessible via https://www.directv.com/insider/directv-vs-sling/?msockid=3dbe0105ce29689633241756cfd36995).

50.    Similarly, for example, DISH's Hopper and Joey set-top box systems provide satellite television with DVR, electronic program guide features, and interactive features similar to DIRECTV's Genie and Genie Mini systems. While DISH's products differ from DIRECTV's in their specific implementations, they operate in the same market and provide similar categories of features. *See, e.g.*, DISH Hopper 3 vs. DIRECTV Genie, February 23, 2026 (accessible via https://www.cabletv.com/reviews/dish-hopper-3-vs-directv-genie).

51.    The categories of DIRECTV at issue in the DIRECTV DJ Lawsuit and the Adeia SDNY Suit parallel the categories of features available in DISH's product lineup. DIRECTV alleged it was accused of infringing the Patents-in-Suit through, at least, multi-resolution content delivery, location-based program availability, mid-stream advertisement insertion, continue-watching functionality, DVR recording and playback, recorded program management, interactive sports scoreboards, HD/SD channel substitution in program guides, and targeted advertising. *See* DIRECTV DJ Lawsuit, D.I. 1, ¶¶ 23. DISH's Sling TV, Hopper, Joey, DISH Anywhere, and Game Finder products and services include

features in these same categories, though the specific implementations differ in at least certain respects discussed in the Counts below.

52. On information and belief, Adeia will imminently contend that the technology underlying the infringement theories it has advanced against DIRECTV for the Patents-in-Suit are also applicable to DISH's products and services.

53. Given that Adeia has accused DIRECTV of infringing the Patents-in-Suit, given that Adeia's primary business is in monetizing its patents, given that DIRECTV provides products and services in the same market as DISH's, and given that DISH does not have an express license to the Patents-in-Suit as of April 1, 2026, DISH has a concrete and non-speculative basis to expect that Adeia will assert the Patents-in-Suit against DISH.

54. As set forth in the Counts below, however, DISH's products and services do not infringe any valid and enforceable claim of any Patent-in-Suit.

55. Adeia has given no indication that it will refrain from pursuing patent infringement claims against companies that provide pay-television products and services without a license to Adeia's patent portfolio.

56. On information and belief, Adeia will contend that, in the absence of an express license, at least DISH's Sling TV and DISH Anywhere streaming services (collectively, "DISH Streaming Products and Services") infringe at least claim 1 of the '010 Patent.

57. On information and belief, Adeia will contend that, in the absence of an express license, at least DISH's Streaming Products and Services infringe at least claim 1 of the '418 Patent.

58. On information and belief, Adeia will contend that, in the absence of an express license, at least DISH's Streaming Products and Services infringe at least claim 1 of the '245 Patent

COMPLAINT FOR DECLARATORY JUDGMENT

59. On information and belief, Adeia will contend that, in the absence of an express license, at least DISH's Streaming Products and Services infringe at least claim 1 of the '961 Patent.

60. On information and belief, Adeia will contend that, in the absence of an express license, at least DISH's Streaming Products and Services infringe at least claim 1 of the '334 Patent.

61. On information and belief, Adeia will contend that, in the absence of an express license, at least DISH's Hopper and Joey products, DISH Anywhere, and set-top box systems infringe at least claim 32 of the '528 Patent. These products and services are collectively referred to herein as the "DISH DBS Products and Services."

62. On information and belief, Adeia will contend that, in the absence of an express license, at least DISH's DBS Products and Services infringe at least claim 1 of the '526 Patent.

63. On information and belief, Adeia will contend that, in the absence of an express license, at least DISH's DBS Products and Services infringe at least claim 1 of the '668 Patent.

64. On information and belief, Adeia will contend that, in the absence of an express license, at least DISH's DBS Products and Services infringe at least claim 1 of the '922 Patent.

65. The above-referenced DISH Streaming Products and Services and DISH DBS Products and Services offered to its customers are collectively referred to herein as the "DISH Products and Services."

66. DISH has reason to expect that if it does not agree to a license agreement with Adeia and continues selling its DISH Products and Services, that it is at imminent risk of being sued by Adeia for patent infringement.

67.     DISH has reason to expect that if it does not agree to a license agreement with Adeia and continues selling its DISH Products and Services, that it is at imminent risk for possibly accruing damages for patent infringement with respect to Adeia's patents, including particularly the Patents-in-Suit.

68.     DISH brings this action to resolve the dispute between the parties so that it does not have to proceed at risk of being found liable for patent infringement and accruing liability for damages.

69.     Accordingly, an actual and justiciable controversy exists as to whether DISH infringes any valid and enforceable claim of the Patents-in-Suit.

70.     DISH reserves the right to assert additional claims, defenses, and theories of invalidity, including but not limited to invalidity under 35 U.S.C. §§ 102, and 103 based on prior art identified through discovery. The theories set forth in this Complaint are not exhaustive.

## JURISDICTION AND VENUE

71.     This action arises under the Patent Laws of the United States of America, 35 U.S.C. § 100 *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.*

72.     This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338 based on the existence of an actual controversy between DISH and Adeia for claims under the Patent Laws. In particular, there is an active case or controversy about whether DISH infringes any valid and enforceable claim of each of the Patents-in-Suit. *See*, *e.g.*, *supra* ¶¶ 1-70.

73.     This Court has personal jurisdiction over Adeia because Adeia has engaged in actions in the Northern District of California that have established sufficient minimum contacts.

74. Additionally, this Court has personal jurisdiction over Adeia because Adeia's principal place of business is located within this district, namely at 3025 Orchard Parkway, San Jose, California 95134.

75. The exercise of personal jurisdiction in this District over Adeia does not offend traditional notions of fairness or substantial justice.

76. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1400(b) as a substantial part of the events or omissions giving rise to the claims occurred in this District, and Adeia's principal place of business is in this District, each of which also subjects Adeia to personal jurisdiction.

## INTRADISTRICT ASSIGNMENT

77. Pursuant to Civil L.R. 3-2(c) and 3-5(b) and General Order No. 44, this is an intellectual property rights action subject to assignment on a district-wide basis.

78. This action is subject to the Patent Local Rules of this District.

## THE PATENTS-IN-SUIT

**A.      U.S. Patent No. 10,506,010**

79. U.S. Patent No. 10,506,010 (the "'010 Patent") is titled "Delivering Content in Multiple Formats." A copy of the '010 Patent is attached hereto as Exhibit 1. The '010 Patent on its face indicates that it was originally assigned to Comcast Cable Communications LLC, and that the inventors are Danial E. Holden and Austin J. Vrbas. On information and belief, Comcast Cable Communications, LLC assigned the '010 Patent to Adeia Media Holdings LLC on November 24, 2020, in conjunction with a license agreement between those parties entered in 2020. On information and belief, Adeia Media Holdings LLC is the current recorded assignee of the '010 Patent. Given that Adeia Media Holdings LLC appears to no longer exist, on information and belief, any rights held in the '010 Patent have been transferred to Adeia Media Holdings Inc.

80. The application that issued as the '010 Patent was filed on February 1, 2017, and it was issued on December 10, 2019.

81. DISH disputes that it infringes any valid and enforceable claims of the '010 Patent.

**B.      U.S. Patent No. 8,805,418**

82. U.S. Patent No. 8,805,418 (the "'418 Patent") is titled "Methods and Systems for Performing Actions Based on Location-Based Rules." A copy of the '418 Patent is attached hereto as Exhibit 2.

83. The '418 Patent on its face indicates that it was originally assigned to United Video Properties, Inc., and that the inventor is Michael R. Nichols of Santa Clara, California. Adeia Guides Inc. is listed as the current assignee in the public records of the U.S. Patent and Trademark Office.

84. The application that issued as the '418 Patent was filed on December 23, 2011, and it was issued on August 12, 2014.

85. DISH disputes that it infringes any valid and enforceable claims of the '418 Patent.

**C.      U.S. Patent No. 11,778,245**

86. U.S. Patent No. 11,778,245 (the "'245 Patent") is titled "Interrupting Presentation of Content Data to Present Additional Content in Response to Reaching a Timepoint Relating to the Content Data and Notifying a Server Over the Internet." A copy of the '245 Patent is attached hereto as Exhibit 3.

87. The '245 Patent on its face indicates that it was originally assigned to TiVo Solutions Inc., and that the inventor is James M. Barton of Los Gatos, California. Adeia Media Solutions Inc. is listed as the current assignee in the public records of the U.S. Patent and Trademark Office.

88.     The application that issued as the '245 Patent was filed on August 13, 2018, and it was issued on October 3, 2023.

89.     DISH disputes that it infringes any valid and enforceable claims of the '245 Patent.

**D.      U.S. Patent No. 10,110,961**

90.     U.S. Patent No. 10,110,961 (the "'961 Patent") is titled "Methods and Systems for Supplementing Media Assets During Fast-Access Playback Operations." A copy of the '961 Patent is attached hereto as Exhibit 4.

91.     The '961 Patent on its face indicates that it was originally assigned to Rovi Guides, Inc., and that the inventor is Paul T. Stathacopoulos of San Carlos, California. Adeia Guides Inc. is listed as the current assignee in the public records of the U.S. Patent and Trademark Office.

92.     The application that issued as the '961 Patent was filed on January 25, 2017, and it was issued on October 23, 2018.

93.     DISH disputes that it infringes any valid and enforceable claims of the '961 Patent.

**E.      U.S. Patent No. 9,715,334**

94.     U.S. Patent No. 9,715,334 (the "'334 Patent") is titled "Personalized Timeline Presentation." A copy of the '334 Patent is attached hereto as Exhibit 5.

95.     The '334 Patent on its face indicates that it was originally assigned to MobiTV, Inc., and that the inventors are Kay Johansson of Alamo, California, and Cedric Fernandes of San Roman, California. On information and belief, Adeia Media Holdings LLC is the current recorded assignee of the '334 Patent. Given that Adeia Media Holdings LLC appears to no longer exist, on information and belief, any rights held in the '334 Patent have been transferred to Adeia Media Holdings Inc.

COMPLAINT FOR DECLARATORY JUDGMENT
- 15 -

96. The application that issued as the '334 Patent was filed on June 16, 2014, and it was issued on July 25, 2017.

97. DISH disputes that it infringes any valid and enforceable claims of the '334 Patent.

**F.      U.S. Patent No. 8,156,528**

98. U.S. Patent No. 8,156,528 (the "'528 Patent") is titled "Personal Video Recorder Systems and Methods." A copy of the '528 Patent is attached hereto as Exhibit 6.

99. The '528 Patent on its face indicates that it was originally assigned to United Video Properties, Inc., and that the inventors are Joseph P. Baumgartner, Kenneth F. Carpenter, Jr., Michael D. Ellis, and Danny R. Gaydou. Adeia Guides Inc. is listed as the current assignee in the public records of the U.S. Patent and Trademark Office.

100. The application that issued as the '528 Patent was filed on March 21, 2002, and it was issued on April 10, 2012.

101. DISH disputes that it infringes any valid and enforceable claims of the '528 Patent.

**G.      U.S. Patent No. 8,601,526**

102. U.S. Patent No. 8,601,526 (the "'526 Patent") is titled "Systems and Methods for Displaying Media Content and Media Guidance Information." A copy of the '526 Patent is attached hereto as Exhibit 7.

103. The '526 Patent on its face indicates that it was originally assigned to United Video Properties, Inc., and that the inventors are Akitaka Nishimura and Akio Yoshimoto. Adeia Guides Inc. is listed as the current assignee in the public records of the U.S. Patent and Trademark Office.

104.     The application that issued as the '526 Patent was filed on June 23, 2008, and it was issued on December 3, 2013.

105.     DISH disputes that it infringes any valid and enforceable claims of the '526 Patent.

**H.      U.S. Patent No. 8,640,165**

106.     U.S. Patent No. 8,640,165 (the "'165 Patent") is titled "Systems and methods for providing enhanced sports watching media guidance." A copy of the '165 Patent is attached hereto as Exhibit 8.

107.     The '165 Patent on its face indicates that it was originally assigned to Rovi Guides, Inc. and that the inventors are Michael D. Ellis and Jon P. Radloff. Adeia Guides, Inc. is listed as the current assignee in the public records of the U.S. Patent and Trademark Office.

108.     The application that issued as the '165 Patent was filed on July 31, 2007, and it was issued on January 28, 2014.

109.     DISH disputes that it infringes any valid and enforceable claims of the '165 Patent.

**I.      U.S. Patent No. 8,234,668**

110.     U.S. Patent No. 8,234,668 (the "'668 Patent") is titled "Content access." A copy of the '668 Patent is attached hereto as Exhibit 9.

111.     The '668 Patent on its face indicates that it was originally assigned to Microsoft Corporation and that the inventors are Peter J. Potrebic of Calistoga, California, Prashant K. Jha of Mountain View, California, and Mark B. Tozer of Lake Mary, Florida. Adeia Technologies, Inc. is listed as the current assignee in the public records of the U.S. Patent and Trademark Office.

112.   The application that issued as the '668 Patent was filed on December 23, 2008, and it was issued on July 31, 2012.

113.   DISH disputes that it infringes any valid and enforceable claims of the '668 Patent.

**J.     U.S. Patent No. 12,301,922**

114.   U.S. Patent No 12,301,922 (the "'922 Patent") is titled "Systems and methods for providing synchronized supplemental content to a subset of users that are disinterested in live content." A copy of the '922 Patent is attached hereto as Exhibit 10.

115.   The '922 Patent on its face indicates that it was originally assigned to Adeia Guides, Inc. and that the inventors are Dylan Matthew Wondra of Mountain View, California, Jean Michelle Somlo of Sunnyvale, California, Michaela Schlocker Logan of San Jose California, Mario Miguel Sanchez of San Jose, California, and William L. Thomas of Evergreen, Colorado. Adeia Guides, Inc. is listed as the current assignee in the public records of the U.S. Patent and Trademark Office.

116.   The application that issued as the '922 Patent was filed on January 10, 2024, and it was issued on May 13, 2025.

117.   DISH disputes that it infringes any valid and enforceable claims of the '922 Patent.

## COUNT I

## DECLARATORY JUDGMENT OF NONINFRINGEMENT OF '010 PATENT

118.   DISH realleges and incorporates by reference each paragraph above, as if fully set forth herein.

119.   As set forth above, on information and belief, Adeia will contend that DISH infringes at least one claim of the '010 Patent. In particular, on information and belief, Adeia will contend that DISH Streaming Products and Services infringe at least claim 1.

120.    As a result of the circumstances described above, including Adeia's enforcement of its patent portfolio with respect to the '010 Patent, an actual and judiciable controversy exists between Adeia and DISH regarding the infringement of the '010 Patent.

121.    DISH Streaming Products and Services do not infringe and have not infringed, directly or indirectly, any claim of the '010 Patent, either literally or under the doctrine of equivalents.

122.    Specifically, claim 1 requires that the computing device "align[s]… based on a point in the content item that corresponds to a beginning of the first fragment and a beginning of the second fragment, the first fragment with the second fragment."

123.    DISH does not infringe claim 1 of the '010 Patent at least because the DISH Streaming Products and Services use adaptive bitrate (ABR) streaming with independent bitrate profiles. Each profile is a complete, independently playable stream, and the claimed "aligning…based on a point…that corresponds to a beginning of the first fragment and a beginning of the second fragment" does not occur. Moreover, the DISH Streaming Products and Services do not use the same "computing device" to perform all the limitations of claim 1, including "receiving" a content item, "transcoding," "fragmenting," "aligning," and "storing." For the same reasons, no reasonable application of the doctrine of equivalents would extend the scope of claim 1 of the '010 Patent to encompass DISH's Streaming Products and Services.

124.    DISH is entitled to a judgment declaring that the DISH Products and Services do not and will not infringe any claim of the '010 Patent.

## COUNT II

## DECLARATORY JUDGMENT OF NONINFRINGEMENT OF '245 PATENT

125.    DISH realleges and incorporates by reference each paragraph above, as if fully set forth herein.

126. As set forth above, on information and belief, Adeia will contend that DISH infringes at least one claim of the '245 Patent. In particular, on information and belief, Adeia will contend that DISH Streaming Products and Services infringe at least claim 1.

127. As a result of the circumstances described above, including Adeia's enforcement of its patent portfolio with respect to the '245 Patent, an actual and judiciable controversy exists between Adeia and DISH regarding the infringement of the '245 Patent.

128. The DISH Products and Services do not infringe and have not infringed, directly or indirectly, any claim of the '245 Patent, either literally or under the doctrine of equivalents.

129. Specifically, claim 1 requires "a set of timepoints relating to the content data [received at the client device] prior to generating for display…any portion of the content data."

130. The DISH Products and Services do not infringe claim 1 of the '245 Patent at least because Sling TV uses server-side ad insertion (SSAI), in which ad breaks are signaled via transport-stream markers and the SSAI server performs manifest manipulation to stitch ads before delivery. The client receives a pre-stitched continuous stream and never receives ad timepoints. The "set of timepoints" are not received "at the first [client] device" as required by the claim. For the same reasons, no reasonable application of the doctrine of equivalents would extend the scope of claim 1 of the '245 Patent to encompass DISH's Streaming Products and Services.

131. DISH is entitled to a judgment declaring that the DISH Products and Services do not and will not infringe any claim of the '245 Patent.

## COUNT III

### DECLARATORY JUDGMENT OF NONINFRINGEMENT OF '961 PATENT

132.    DISH realleges and incorporates by reference each paragraph above, as if fully set forth herein.

133.    As set forth above, on information and belief, Adeia will contend that DISH infringes at least one claim of the '961 Patent. In particular, on information and belief, Adeia will contend that DISH Streaming Products and Services infringe at least claim 1.

134.    As a result of the circumstances described above, including Adeia's enforcement of its patent portfolio with respect to the '961 Patent, an actual and judiciable controversy exists between Adeia and DISH regarding the infringement of the '961 Patent.

135.    The DISH Products and Services do not infringe and have not infringed, directly or indirectly, any claim of the '961 Patent, either literally or under the doctrine of equivalents.

136.    Specifically, claim 1 requires that "a user input" is received "while a media asset is subject to a fast-access playback operation," and that a progression point indicated by the user's input is "compar[ed]…to a plurality of progression points stored in a database."

137.    The DISH Products and Services do not infringe claim 1 of the '961 Patent at least because the DISH Products and Services does not provide fast-access playback with supplemental media display as claimed. "A user input" is not received "while a media asset is subject to a fast-access playback operation" as required by the claim. For the same reasons, no reasonable application of the doctrine of equivalents would extend the scope of claim 1 of the '961 Patent to encompass DISH's Streaming Products and Services.

138.    DISH is entitled to a judgment declaring that the DISH Products and Services do not and will not infringe any claim of the '961 Patent.

## COUNT IV

### DECLARATORY JUDGMENT OF NONINFRINGEMENT OF '334 PATENT

139.    DISH realleges and incorporates by reference each paragraph above, as if fully set forth herein.

140.    As set forth above, on information and belief, Adeia will contend that DISH infringes at least one claim of the '334 Patent. In particular, on information and belief, Adeia will contend that DISH Streaming Products and Services infringe at least claim 1.

141.    As a result of the circumstances described above, including Adeia's enforcement of its patent portfolio with respect to the '334 Patent, an actual and judiciable controversy exists between Adeia and DISH regarding the infringement of the '334 Patent.

142.    The DISH Products and Services do not infringe and have not infringed, directly or indirectly, any claim of the '334 Patent, either literally or under the doctrine of equivalents.

143.    Specifically, claim 1 requires that "an instruction [is transmitted] to a client device to initiate playback of the video content item in accordance with the designated pause event at the client device."

144.    The DISH Products and Services do not infringe claim 1 of the '334 Patent at least because the DISH Streaming Products and Services store playback positions server-side but present the individual user with a choice to resume or restart. There is no "instruction to a client device to initiate playback of the video content item in accordance with the designated pause event at the client device" as required by the claim. For the same reasons, no reasonable application of the doctrine of equivalents would extend the scope of claim 1 of the '334 Patent to encompass DISH's Streaming Products and Services.

145.    DISH is entitled to a judgment declaring that the DISH Products and Services do not and will not infringe any claim of the '334 Patent.

## COUNT V

## DECLARATORY JUDGMENT OF NONINFRINGMENT OF '528 PATENT

146.    DISH realleges and incorporates by reference each paragraph above, as if fully set forth herein.

147.    As set forth above, on information and belief, Adeia will contend that DISH infringes at least one claim of the '528 Patent. In particular, on information and belief, Adeia will contend that DISH DBS Products and Services infringe at least claim 32.

148.    As a result of the circumstances described above, including Adeia's enforcement of its patent portfolio with respect to the '528 Patent, an actual and judiciable controversy exists between Adeia and DISH regarding the infringement of the '528 Patent.

149.    The DISH Products and Services do not infringe and have not infringed, directly or indirectly, any claim of the '528 Patent, either literally or under the doctrine of equivalents.

150.    Specifically, claim 32 requires a "personal video recorder device comprising… software and hardware configured to implement a first interactive television program guide," a coupled "personal video recorder compliant device with software and hardware configured to implement a second interactive television program guide," and that the "first interactive television program guide and the second interactive television program guide…are distinctly implemented"—i.e., not the same interactive program guide.

151.    DISH does not infringe claim 32 of the '528 Patent at least because DISH's DBS Products and Services generate EPG data that a thin client requests and reads from the same shared data source. The thin clients within DISH DBS Products and Services have no tuners and no independent guide. The DISH DBS Products and Services are not "configured to implement a first interactive television program guide" and a "second interactive television program guide" as required by the claim. For the same reasons, no

reasonable application of the doctrine of equivalents would extend the scope of claim 32 of the '528 Patent to encompass DISH's DBS Products and Services.

152. DISH is entitled to a judgment declaring that the DISH Products and Services do not and will not infringe any claim of the '528 Patent.

## COUNT VI

## DECLARATORY JUDGMENT OF UNPATENTABILITY OF '526 PATENT

153. DISH realleges and incorporates by reference each paragraph above, as if fully set forth herein.

154. As set forth above, on information and belief, Adeia will contend that DISH infringes at least one claim of the '526 Patent. In particular, on information and belief, Adeia will contend that DISH Products and Services infringe at least claim 1.

155. As a result of the circumstances described above, including Adeia's enforcement of its patent portfolio with respect to the '526 Patent, an actual and judiciable controversy exists between Adeia and DISH regarding the infringement and validity of the '526 Patent.

156. At least claim 1 of the '526 Patent is unpatentable under 35 U.S.C. § 101 as directed to patent-ineligible subject matter. Specifically, claim 1 of the '526 Patent is directed to the abstract idea of receiving, transmitting, and displaying media guidance information between a portable device and another device having a separate display.

157. The Federal Circuit "generally hold[s] claims directed to nothing more than collecting, analyzing, and displaying information, even when limited to a particular field of endeavor, to be abstract." *Cascades Branding Innovation LLC v. Aldi, Inc.*, 2025 WL 2731321, at *3 (Fed. Cir. Sep. 25, 2025) (citing *Elec. Pwr. Grp., LLC v. Alstom*, 830 F.3d 1350, 1353-54 (Fed. Cir. 2016)).

158.    Claim 1 of the '526 Patent does not recite an inventive concept. Rather, the claim recites generic components such as a "portable electronic device," "control circuitry," and a "communication link," all of which are described as performing their conventional and routine functions.

159.    The ordered combination of these elements amounts to nothing more than a straightforward implementation of the abstract idea on generic computer hardware. There is no specific, unconventional technological solution described in the claims that improves the functioning of the computer or network itself.

160.    Further, the '526 Patent admits that interactive media guidance applications were known and a user could access and manipulate various types of data through these applications. *See* Ex. 7at 1:30-43.

161.    Claim 1 of the '526 Patent is not sufficiently integrated into a practical application. Claim 1 of the '526 Patent merely adds insignificant extra-solution activity to signal communications between network devices.

162.    Thus, claim 1 of the '526 Patent does nothing more than recite the abstract idea of receiving, transmitting, and displaying media guidance information between a portable device and another device having a separate display using existing, generic hardware and software.

163.    DISH is entitled to a judgment declaring that the'526 Patent is invalid because it purports to claim unpatentable subject matter.

## COUNT VII

## DECLARATORY JUDGMENT OF UNPATENTABILITY OF '165 PATENT

164.    DISH realleges and incorporates by reference each paragraph above, as if fully set forth herein.

165.    As set forth above, on information and belief, Adeia will contend that DISH infringes at least one claim of the '165 Patent. In particular, on information and belief, Adeia will contend that DISH DBS Products and Services infringe at least claim 1.

166.    As a result of the circumstances described above, including Adeia's enforcement of its patent portfolio with respect to the '165 Patent, an actual and judiciable controversy exists between Adeia and DISH regarding the infringement and validity of the '165 Patent.

167.    At least claim 1 of the '165 Patent is unpatentable under 35 U.S.C. § 101 as directed to patent-ineligible subject matter. Specifically, claim 1 of the '165 Patent is directed to the abstract idea of displaying an interactive scoreboard during a sporting event.

168.    Claim 1 of the '165 Patent does not recite an inventive concept. Rather, it is directed to routine and conventional activities, implemented on commonplace devices. For example, the '165 Patent describes implementing the abstract idea of an interactive scoreboard as an application (i.e., software) displayed on a TV for providing sports information ("An interactive 'sports watcher' application may execute at least partially on a local user equipment device to support the enhanced access and viewing functionality."). *See* Ex. 8 at 2:21-24.

169.    The '165 Patent admits, however, that interactive media applications were known (e.g., in the form of program guides), could access various types of data, and support various types of "advanced" features ("generalized applications that support basic media guidance functionality for a wide array of media content of a variety of different genres and subgenres"). *See id.* at 1:32-35. At most, the '165 Patent suggests that its innovation was using this type of known application and data access in the field of sports ("These applications, however, typically fail to provide a custom set of features and functionality for specific types of media content, such as sporting events and other sports-related

COMPLAINT FOR DECLARATORY JUDGMENT

content."). *See id.* at 1:35-38. And there is no new hardware here—the patent admits that all of this can be accomplished with existing processors and/or graphics circuitry. *See, e.g.*, *id.* at 9:26-52.

170. The Federal Circuit "generally hold[s] claims directed to nothing more than collecting, analyzing, and displaying information, even when limited to a particular field of endeavor, to be abstract." *Cascades Branding Innovation LLC v. Aldi, Inc.*, 2025 WL 2731321, at *3 (Fed. Cir. Sep. 25, 2025) (citing *Elec. Pwr. Grp., LLC v. Alstom*, 830 F.3d 1350, 1353-54 (Fed. Cir. 2016)).

171. There were no technical hurdles, for instance, in providing simultaneous displays or responding to user inputs. *Id*. at 9:35-41 ("As is currently understood in the art, the output from more than one tuner may be decoded and displayed simultaneously on a single display screen if desired. For example, picture-in-picture (PIP) or picture-on-picture (POP) modes may be implemented to allow for multiple video windows to be displayed simultaneously.").

172. Thus, claim 1 of the '165 Patent does nothing more than recite the abstract idea of displaying interactive scores during a sporting event using existing, generic hardware and software.

173. DISH is entitled to a judgment declaring that the '165 Patent is invalid because it purports to claim unpatentable subject matter.

## COUNT VIII

## DECLARATORY JUDGMENT OF UNPATENTABILITY OF '668 PATENT

174. DISH realleges and incorporates by reference each paragraph above, as if fully set forth herein.

175. As set forth above, on information and belief, Adeia will contend that DISH infringes at least one claim of the '668 Patent. In particular, on information and belief, Adeia will contend that DISH DBS Products and Services infringe at least claim 1.

176. As a result of the circumstances described above, including Adeia's enforcement of its patent portfolio with respect to the '668 Patent, an actual and judiciable controversy exists between Adeia and DISH regarding the infringement and validity of the '668 Patent.

177. At least claim 1 of the '668 Patent is unpatentable under 35 U.S.C. § 101 as patent-ineligible subject matter. Specifically, claim 1 of the '668 Patent is directed to the abstract idea of providing access to high-definition channels in a program guide when available (*e.g.*, instead of providing the corresponding standard-definition channels). Put another way, the '668 Patent is directed to non-duplicative access of content. This abstract idea—providing a higher-quality product in place of a lower-quality product when said higher-quality product is available—is a traditional notion of market behavior that has existed long before the advent of television or high-definition channels.

178. The Federal Circuit "generally hold[s] claims directed to nothing more than collecting, analyzing, and displaying information, even when limited to a particular field of endeavor, to be abstract." *Cascades Branding Innovation LLC v. Aldi, Inc.*, 2025 WL 2731321, at *3 (Fed. Cir. Sep. 25, 2025) (citing *Elec. Pwr. Grp., LLC v. Alstom*, 830 F.3d 1350, 1353-54 (Fed. Cir. 2016)).

179. Claim 1 of the '668 Patent does not recite an inventive concept. Rather, it is directed to routine and conventional activities, implemented on commonplace devices. For example, the '668 Patent describes implementing the abstract idea of non-duplicative access of content, e.g., standard-definition and high-definition channels in a program guide. Ex. 9 at 3:13-17 ("[I]nclusion of both channels in an EPG may be duplicative.

Consequently, in this implementation access to channels having matching content is granted or restricted based on the capabilities of the client (e.g., capability to output content in high definition).").

180.    The '668 Patent admits, however, that use of program guides to access content was well-known and commonplace by 2008, the filing year of the '668 Patent. *See generally id.* at 2:45-58 ("For example, a traditional approach employed by a client having PVR functionality was based on an implicit directive that users were to browse through the EPG to find interesting programs that the users wanted to record on their own."). Indeed, the '668 Patent describes that, at the time of the invention, there was nothing new about providing content to users in various ways. *See id.* at 1:13-18 (*e.g.*, "standard definition versus high definition").

181.    Moreover, the '668 Patent does not address a particular technical problem. *Id.* at 4:4-10. ("The client 104 may be configured in a variety of ways. For example, the client 104 may be configured as a computer that is capable of communicating over the network connection 108, such as a desktop computer, a mobile station, an entertainment appliance, a set-top box communicatively coupled to a display device as illustrated, a wireless phone, and so forth.").

182.    All of the components recited in Claim 1 of the '668 Patent, including a "client device"; "high-definition" and "standard-definition" channels; and an "electronic program guide" were all well-known or conventional by the priority date of the '668 Patent.

183.    Thus, claim 1 of the '668 Patent does nothing more than recite the abstract idea of product substitution based on availability of a higher-quality product as implemented on generic, off-the-shelf hardware.

184.    DISH is entitled to a judgment declaring that the '668 Patent is invalid because it purports to claim unpatentable subject matter.

## COUNT IX

## DECLARATORY JUDGMENT OF UNPATENTABILITY OF '528 PATENT

185. DISH realleges and incorporates by reference each paragraph above, as if fully set forth herein.

186. As set forth above, on information and belief, Adeia will contend that DISH infringes at least one claim of the '528 Patent. In particular, on information and belief, Adeia will contend that DISH DBS Products and Services infringe at least claim 32.

187. As a result of the circumstances described above, including Adeia's enforcement of its patent portfolio with respect to the '528 Patent, an actual and judiciable controversy exists between Adeia and DISH regarding the infringement and validity of the '528 Patent.

188. At least claim 32 of the '528 Patent is unpatentable under 35 U.S.C. § 101 as patent-ineligible subject matter. Specifically, the claims of the '528 Patent are directed to the abstract idea of organizing PVR functionality and information across two devices to create a unified user experience.

189. The Federal Circuit "generally hold[s] claims directed to nothing more than collecting, analyzing, and displaying information, even when limited to a particular field of endeavor, to be abstract." *Cascades Branding Innovation LLC v. Aldi, Inc.*, 2025 WL 2731321, at *3 (Fed. Cir. Sep. 25, 2025) (citing *Elec. Pwr. Grp., LLC v. Alstom*, 830 F.3d 1350, 1353-54 (Fed. Cir. 2016)).

190. Claim 32 of the '528 Patent does not recite an inventive concept. Rather, it is directed to routine and conventional activities, implemented on commonplace devices.

191. The claims of the '528 Patent are not directed to a specific technological improvement in how a computer or television system operates, but rather to a high-level architectural concept.

192.    The subject matter of claim 32 relies entirely on generic and conventional components, such as set-top boxes, PVRs, interactive program guides, and APIs, all performing their ordinary functions. The arrangement of these components in a "dual-platform" architecture is a conventional modular design choice, not a specific, unconventional solution that amounts to "significantly more" than the abstract idea itself. Therefore, the claims are merely an instruction to apply an abstract idea using conventional technology.

193.    Thus, claim 32 of the '528 Patent does nothing more than recite the abstract idea of organizing PVR functionality and information across two devices to create a unified user experience.

194.    DISH is entitled to a judgment declaring that the '528 Patent is invalid because it purports to claim unpatentable subject matter.

## COUNT X

## DECLARATORY JUDGMENT OF UNPATENTABILITY OF '922 PATENT

195.    DISH realleges and incorporates by reference each paragraph above, as if fully set forth herein.

196.    As set forth above, on information and belief, Adeia will contend that DISH infringes at least one claim of the '922 Patent. In particular, on information and belief, Adeia will contend that DISH DBS Products and Services infringe at least claim 1.

197.    As a result of the circumstances described above, including Adeia's enforcement of its patent portfolio with respect to the '922 Patent, an actual and judiciable controversy exists between Adeia and DISH regarding the infringement and validity of the '922 Patent.

198.    At least claim 1 of the '922 Patent is unpatentable under 35 U.S.C. § 101 as patent-ineligible subject matter. Specifically, the claims of the '922 Patent are directed to

COMPLAINT FOR DECLARATORY JUDGMENT

the abstract idea of identifying a subset of users and outputting targeted content to said subset of users. This abstract idea is not unique to broadcast television—rather it has consistently been integrated in consumer markets. For example, targeted advertising traces back to the earliest days of print media, where certain demographics received different advertisements based on expected engagement with said advertisements.

199. The Federal Circuit "generally hold[s] claims directed to nothing more than collecting, analyzing, and displaying information, even when limited to a particular field of endeavor, to be abstract." *Cascades Branding Innovation LLC v. Aldi, Inc.*, 2025 WL 2731321, at *3 (Fed. Cir. Sep. 25, 2025) (citing *Elec. Pwr. Grp., LLC v. Alstom*, 830 F.3d 1350, 1353-54 (Fed. Cir. 2016)).

200. Claim 1 of the '922 Patent does not recite an inventive concept. Rather, it is directed to routine and conventional activities, implemented on commonplace devices.

201. For example, the '922 Patent describes implementing the abstract idea of identifying a subset of users and outputting targeted content to said subset of users. Ex. 10 at 1:63-2:2 ("a media guidance application that replaces a segment of live content from an over-the-top (OTT) provider with a segment of non-live content from the OTT provider for a subset of users that is both disinterested in the segment of live content and also part of a same synchronized viewing group."). The '922 Patent admits that, at the time of the invention, it was known for computers to interpret preferences ("content providers transmit and receive metadata associated with media and/or profiles associated with users and determine when a user is interested or disinterested in content") and provide supplemental content to a single user using existing equipment. *Id*. at. 1:48-54 ("[t]he advancement of digital transmission of media content has increased the amount of data that can be transmitted between content providers and user equipment").

202.    Put differently, by the effective filing date of the '922 Patent, content providers could identify targeted content based on user metadata and provide said content to a single user. *Id.* at 1:58-62 ("[computer systems] simply provide supplemental content to a single user based on that single user's interests").

203.    Further, claim 1 does not implicate any technical requirements or address a particular technical problem. *Id.* at 12:37-40 ("With the advent of the Internet, mobile computing, and high-speed wireless networks, users are accessing media on user equipment devices on which they traditionally did not"); *see also id.* at 12:40-58 (listing generic devices such as "television, a Smart TV, a set-top box…or any other television equipment, computing equipment, or wireless device" as capable of accessing the content described in the claims).

204.    Thus, claim 1 of the '922 Patent does nothing more than recite the abstract idea of identifying a subset of users and outputting targeted content to said subset of users using known techniques and displaying said targeted content on existing devices.

205.    DISH is entitled to a judgment declaring that the '922 Patent is invalid because it purports to claim unpatentable subject matter.

## COUNT XI

## DECLARATORY JUDGMENT OF UNPATENTABILITY OF '418 PATENT

206.    DISH realleges and incorporates by reference each paragraph above, as if fully set forth herein.

207.    As set forth above, on information and belief, Adeia will contend that DISH infringes at least one claim of the '418 Patent. In particular, on information and belief, Adeia will contend that DISH Streaming Products and Services infringe at least claim 1.

208.    As a result of the circumstances described above, including Adeia's enforcement of its patent portfolio with respect to the '418 Patent, an actual and judiciable

controversy exists between Adeia and DISH regarding the infringement and validity of the '418 Patent.

209.   At least claim 1 of the '418 Patent is unpatentable under 35 U.S.C. § 101 as directed to patent-ineligible subject matter. Specifically, claim 1 of the '418 Patent is directed to the abstract idea of performing actions based on location-based rules—*e.g.*, rule-based content personalization triggered by a user's geographic location. *See, e.g.*, Ex. 2, 23:9-26. This is a fundamentally abstract of targeted content delivery that long predates the patent.

210.   The Federal Circuit "generally hold[s] claims directed to nothing more than collecting, analyzing, and displaying information, even when limited to a particular field of endeavor, to be abstract." *Cascades Branding Innovation LLC v. Aldi, Inc.*, 2025 WL 2731321, at *3 (Fed. Cir. Sep. 25, 2025) (citing *Elec. Pwr. Grp., LLC v. Alstom*, 830 F.3d 1350, 1353-54 (Fed. Cir. 2016)).

211.   Claim 1 of the '418 Patent does not recite an inventive concept. Rather, it is directed to routine and conventional activities, implemented on commonplace devices.

212.   For example, the '418 Patent describes implementing the abstract idea of performing actions based on location-based rules using generic user equipment devices. Ex. 2 at 3:5-25 ("the phrase 'user equipment device,' 'user equipment,' 'electronic equipment,' 'electronic device,' 'media equipment device,' or 'media device' should be understood to mean any device for accessing the content described above, such as a television, a Smart TV, a set-top box, an integrated receiver decoder (IRD)…a mobile telephone…or any other television equipment, computing equipment, or wireless device").

213.   The '418 Patent admits, however, that location-based services were well known by the time of the alleged invention. The specification acknowledges that users were

already "accessing media on user equipment devices on which they traditionally did not" via "the Internet, mobile computing, and high-speed wireless networks." *Id*. at 3:5-8.

214.    The processing circuitry described in the patent is entirely generic—"one or more microprocessors, microcontrollers, digital signal processors, programmable logic devices, field-programmable gate arrays (FPGAs), application-specific integrated circuits (ASICs), etc." *Id*. at 7:45-55. The storage is likewise conventional: "RAM, ROM, Hard Disk, Removable Disk, etc." *Id*. at Fig. 3; *see also* 8:20-30. And the location-detection mechanisms are all standard: "Global Positioning System (GPS) circuitry, location-based services (LBS) circuitry, triangulation circuitry, hybrid positioning systems circuitry, or any other suitable position obtaining circuits." *Id*. at 20:43-48.

215.    At most, the '418 Patent suggests that its innovation was applying these known location-detection techniques to the known field of content delivery based on geographic rules—a concept the patent itself illustrates with the everyday example of presenting a movie coupon when a user is near a theater. *See generally id.* at 18:20-35.

216.    Thus, claim 1 of the '418 Patent does nothing more than recite the abstract idea of location-based rule matching as implemented on generic, off-the-shelf hardware using conventional location-detection technology.

217.    DISH is entitled to a judgment declaring that the '418 Patent is invalid because it purports to claim unpatentable subject matter.

## COUNT XII

## DECLARATORY JUDGMENT OF UNPATENTABILITY OF '010 PATENT

218.    DISH realleges and incorporates by reference each paragraph above, as if fully set forth herein.

219.   As set forth above, on information and belief, Adeia will contend that DISH infringes at least one claim of the '010 Patent. In particular, on information and belief, Adeia will contend that DISH Streaming Products and Services infringe at least claim 1.

220.   As a result of the circumstances described above, including Adeia's enforcement of its patent portfolio with respect to the '010 Patent, an actual and judiciable controversy exists between Adeia and DISH regarding the infringement and validity of the '010 Patent.

221.   At least claim 1 of the '010 Patent is unpatentable under 35 U.S.C. § 101 as patent-ineligible subject matter. Specifically, the claims of the '010 Patent are directed to the abstract idea of processing a generic "content item" into different formats, a commonplace practice that is directed to a routine mental process or method of organizing activity. To be sure, this abstract idea is not unique to streaming media—it has consistently been integrated in various consumer markets. For example, "transcoding" content media into multiple formats is akin to processing a printed novel into multiple languages and aligning the various resulting copies such that the storyline and organization of the novel is preserved.

222.   Claim 1 of the '010 is no less abstract because it recites the generic process of "receiving," "transcoding," "fragmenting," "aligning," and "storing" electronic material. *See* Ex. 1, 13:6-25.

223.   The Federal Circuit "generally hold[s] claims directed to nothing more than collecting, analyzing, and displaying information, even when limited to a particular field of endeavor, to be abstract." *Cascades Branding Innovation LLC v. Aldi, Inc.*, 2025 WL 2731321, at *3 (Fed. Cir. Sep. 25, 2025) (citing *Elec. Pwr. Grp., LLC v. Alstom*, 830 F.3d 1350, 1353-54 (Fed. Cir. 2016)).

224. Claim 1 of the '010 Patent is not sufficiently integrated into a practical application. For example, beyond specifying that "content item" may include a "video stream," claim 1 does not recite any additional components besides a generic "computing device." Merely reciting a "computing device" is not sufficient, by itself, to integrate an abstract idea into a practical application.

225. Claim 1 of the '010 Patent does not recite an inventive concept. Rather, it is directed to routine and conventional activities, implemented on commonplace devices. For example, the '010 Patent describes implementing the abstract idea of processing a generic "content item" into different formats. *Id.*, 1:56-60 ("transcoding may be performed such that some or all of the i-frames of each copy of the content are aligned with one another. This allows the terminal to switch between formats of the content mid-viewing without receiving frames that were already transmitted in another format"). The '010 Patent admits that, at the time of the invention, "terminals" were commonplace, distribution networks were well-established, the claimed content sources included "a centralized repository of pre-existing video and/or audio programs" and "a large variety of formats exist and more [were] being developed." *Id.*, 2:48-49, 3:30-31. Put differently, by the effective filing date of the '010 Patent, content providers could receive media in a particular content format, replicate the content according to the "large" preexisting variety of formats, and leverage known distribution networks to deliver content.

226. Further, claim 1 does not implicate any technical requirements or address a particular technical problem that was not already solved. *Id.* at 1:30-32 ("What is needed is an apparatus and method for more efficient delivery of transcoded content to a terminal").

227. Thus, claim 1 of the '010 Patent does nothing more than recite the abstract idea of processing a generic "content item" into different formats.

228. DISH is entitled to a judgment declaring that the '010 Patent is invalid because it purports to claim unpatentable subject matter.

## COUNT XIII

### DECLARATORY JUDGMENT OF UNPATENTABILITY OF '334 PATENT

229. DISH realleges and incorporates by reference each paragraph above, as if fully set forth herein.

230. As set forth above, on information and belief, Adeia will contend that DISH infringes at least one claim of the '334 Patent. In particular, on information and belief, Adeia will contend that DISH Streaming Products and Services infringe at least claim 1.

231. As a result of the circumstances described above, including Adeia's enforcement of its patent portfolio with respect to the '334 Patent, an actual and judiciable controversy exists between Adeia and DISH regarding the infringement and validity of the '334 Patent.

232. At least claim 1 of the '334 Patent is unpatentable under 35 U.S.C. § 101 as patent-ineligible subject matter.

233. The '334 Patent matured out of application 14/306,221 ("the '221 Patent Application"). Ex. 5, at 1 (21).

234. On information and belief, the '221 Patent Application was allowed without receiving an office action on the merits.

235. According to the '334 Patent, the '334 Patent claims priority to application no. 13/591,493 ("the '493 Parent Patent Application"), which issued as 8,793,582. *Id.*, at 1 (63).

236. The '493 Parent Patent Application received a notice of allowance on April 16, 2014, before the Supreme Court decided *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208 (2014). Ex. 11, at 16.

237. Further, according to its prosecution history, the '493 Parent Patent Application was rejected for failing to recite patent-eligible subject matter. The office action rejecting the claims was mailed January 31, 2014. *Id.*, at 42.

238. The claims of the '334 Patent are directed to the abstract idea of organizing and displaying information; specifically bookmarking content for different users, a commonplace practice that is directed to a routine mental process or method of organizing activity.

239. This abstract idea claimed in the '334 Patent is not unique to streaming media—it has consistently been integrated in various consumer markets. For example, multiple "bookmarks" have long been used to mark one or more particular pause points books for centuries.

240. Claim 1 of the '334 Patent is no less abstract because it recites a generic and unbounded "computer system," links the abstract idea to "video," and describes the generic method steps of "receiving a selection" and "transmitting an instruction" to a display screen.

241. Claim 1 of the '334 Patent is not sufficiently integrated into a practical application. For example, beyond specifying that the claimed "profile" may be one of many profiles within a "content management account," and that each profile may individually have a pause event, claim 1 does not recite any additional non-generic components. Merely reciting a "computing device," a "client device," and a "display screen" is not sufficient, by itself, to integrate an abstract idea into a practical application.

242. Claim 1 of the '334 Patent does not recite an inventive concept. Rather, it is directed to routine and conventional activities, implemented on commonplace devices. For example, the '334 Patent describes implementing the abstract idea of organizing and displaying bookmarking content for different users. The '334 Patent does not describe any

hardware components that, at the time of the invention, were novel. Indeed, client devices were well-established, computing devices were well-known, networks for delivering content were well-known, and technology to store pause points was not novel. Put differently, by the effective filing date of the '334 Patent, content providers had all the tangible components to perform the steps of claim 1, and nothing in claim 1 describes any novel technical component that leverages existing systems in any inventive manner.

243.    Further, claim 1 of the '334 Patent does not implicate any technical requirements or address a particular technical problem that was not already solved. *Id*. at 1:30-32 ("What is needed is an apparatus and method for more efficient delivery of transcoded content to a terminal").

244.    Thus, claim 1 of the '334 Patent does nothing more than recite the abstract idea of processing a generic "content item" into different formats.

245.    DISH is entitled to a judgment declaring that the '334 Patent is invalid because it purports to claim unpatentable subject matter.

## DEMAND FOR JURY TRIAL

In accordance with Fed. R. Civ. P. 38, DISH hereby respectfully demands a trial by jury of all issues and claims so triable.

## PRAYER FOR RELIEF

WHEREFORE, DISH prays for judgment as follows:

A.    A declaration that the claims of the '526 Patent, the '165 Patent, the '668 Patent, the '528 Patent, the '922 Patent, the '418 Patent, the '010 Patent, and the '334 Patent are unpatentable or invalid under 35 U.S.C. § 101.

B.    A declaration that DISH does not and has not infringed any valid and enforceable claims of the Patents-in-Suit, either literally or under the Doctrine of Equivalents.

C.    A declaration that DISH does not induce infringement of the Patents-in-Suit.

D.    A declaration that DISH does not contributorily infringe on the Patents-in-Suit.

E.    A declaration that judgment be entered in favor of DISH and against Adeia on DISH's claims.

F.    An order declaring this case to be exceptional under 35 U.S.C. § 285, and awarding DISH its reasonable attorneys' fees.

G.    Such further relief as the Court deems necessary, just, and/or proper.


Dated: April 1, 2026          By:    */s/ G. Hopkins Guy, III*

**BAKER BOTTS L.L.P.**
G. Hopkins Guy, III (CA Bar No. 124811)
1001 Page Mill Road
Building One, Suite 200
Palo Alto, CA 94304
Telephone: (650) 739-7500
hop.guy@bakerbotts.com

Ali Dhanani (Tex. Bar No. 24055400)
*(pro hac vice forthcoming)*
Brian Hausman (Tex. Bar No. 24136892)
*(pro hac vice forthcoming)*
Zacharias Shepard (Tex. Bar No. 24131664)
*(pro hac vice forthcoming)*
910 Louisiana St
Houston, TX 77002
Telephone: (713) 229-1234
ali.dhanani@bakerbotts.com
brian.hausman@bakerbotts.com
zach.shepard@bakerbotts.com

Kurt M. Pankratz (Tex. Bar No. 24013291)
*(pro hac vice forthcoming)*
Griffin R. Tolle (Tex. Bar No. 24115349)
*(pro hac vice forthcoming)*
2001 Ross Ave, Ste 900
Dallas, TX 75201

COMPLAINT FOR DECLARATORY JUDGMENT
- 41 -

Telephone: (214) 953-6500
kurt.pankratz@bakerbotts.com
griffin.tolle@bakerbotts.com

Jamie R. Lynn (DC Bar No. 987740)
*(pro hac vice forthcoming)*
700 K Street, N.W.
Washington, D.C. 20001
Telephone: (202) 639-7700
jamie.lynn@bakerbotts.com

*Attorneys for Plaintiffs DISH Network L.L.C. and Sling TV L.L.C.*