Eliot Williams (Cal. Bar No. 290780)
eliot.williams@bakerbotts.com
**BAKER BOTTS L.L.P.**
700 K Street, N.W.
Washington, D.C. 20001
Telephone: (202) 639-7700

Kurt M. Pankratz (*pro hac vice*)
kurt.pankratz@bakerbotts.com
2001 Ross Avenue, Suite 900
Dallas, Texas 75201
Telephone: (214) 953-6500

[Additional counsel on signature page]

*Attorneys for Plaintiffs DISH Network L.L.C. and Sling TV L.L.C.*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

DISH NETWORK L.L.C. and SLING TV L.L.C.,

Plaintiffs,

v.

ADEIA INC., ADEIA GUIDES INC., ADEIA MEDIA HOLDINGS INC., ADEIA MEDIA HOLDINGS LLC, ADEIA TECHNOLOGIES INC., and ADEIA MEDIA SOLUTIONS INC.,

Defendants.

**Case No. 3:26-cv-02811-JSC**

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION (DKT. 67)**

Date: December 10, 2026
Time: 10:00 a.m.
Courtroom: 8, 19th Floor
Judge: Hon. Jacqueline Scott Corley

**TABLE OF CONTENTS**

**Page**

I. STATEMENT OF THE ISSUES TO BE DECIDED ........ 1

II. INTRODUCTION ........ 1

III. STATEMENT OF FACTS ........ 3

A. DISH, Its Products, and Its History with Adeia ........ 3

B. Adeia's Enforcement Business and Its Public Identification of the Patents-in-Suit ........ 4

C. Adeia Sues DISH on the Same Products Before DISH Files This Action ........ 5

D. Procedural History ........ 6

IV. LEGAL STANDARD ........ 6

V. ARGUMENT ........ 7

A. Adeia's Infringement Suit Against DISH On The Same Products Is The Affirmative Act Directed At DISH That DIRECTV Never Had ........ 7

1. Litigation Between The Same Parties Over The Same Products And Technology Is An Affirmative Act Directed At The Declaratory Plaintiff, Even On Different Patents ........ 7

2. The Controversy Over These Patents Is Immediate And Real: DISH Is Unlicensed, Continues To Offer The Accused Products, And Adeia Says That Use Is Unauthorized ........ 10

3. Adeia's Public Filings Identify The Patents-in-Suit As The Product Of Its Own Infringement Analysis, And The Colorado Suit Shows Adeia Acting On That Analysis ........ 10

4. The *Cepheid* Factors Are Aids, Not Elements, And On This Record They Clearly Favor DISH ........ 11

5. The Complaint's "Will Contend" Allegations Describe Credible Threats, Not A Feigned Prediction ........ 12

B. DISH's Injuries Are Patent-Specific And Fully Redressable; Adeia's Redressability Argument Attacks A Portfolio Theory That DISH Does Not Need ........ 13

C. There Is No Well-Founded Reason To Decline Jurisdiction ........ 14

1. The DIRECTV Rationale—Reliance On Inferences About NDA-Covered Communications—Does Not Apply Where Standing Rests On The Patentee's Own Public Lawsuit ........ 15

2. Adeia's "Collusion" Theory Is Unsupported Attorney Argument ........ 16

3. Declining Jurisdiction Would Defeat The Objectives Of The Act And Would Be An Abuse Of Discretion ........ 17

D. In The Alternative, DISH Requests Leave To Amend ........ 18

VI. CONCLUSION ........ 19

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*3M Co. v. Avery Dennison Corp.*,
673 F.3d 1372 (Fed. Cir. 2012) .......... 2, 7, 11, 12

*AbbVie Inc. v. MedImmune Ltd.*,
881 F.3d 1334 (Fed. Cir. 2018) .......... 14

*Adeia Media Holdings Inc. v. DIRECTV, LLC*,
No. 2:26-cv-07222 (C.D. Cal. filed July 2, 2026) .......... 3

*Adeia Techs. Inc. v. DISH Network Corp.*,
No. 1:26-cv-01373-CNS-STV (D. Colo. Mar. 31, 2026) .......... 1

*Amsted Indus. Inc. v. Buckeye Steel Castings Co.*,
24 F.3d 178 (Fed. Cir. 1994) .......... 14

*Apple Inc. v. Qualcomm Inc.*,
992 F.3d 1378 (Fed. Cir. 2021) .......... 14

*Arkema Inc. v. Honeywell Int'l, Inc.*,
706 F.3d 1351 (Fed. Cir. 2013) .......... 2, 7

*Benitec Austl., Ltd. v. Nucleonics, Inc.*,
495 F.3d 1340 (Fed. Cir. 2007) .......... 7

*Capo, Inc. v. Dioptics Med. Prods., Inc.*,
387 F.3d 1352 (Fed. Cir. 2004) .......... 15, 16, 17, 18

*Caraco Pharm. Labs., Ltd. v. Forest Labs., Inc.*,
527 F.3d 1278 (Fed. Cir. 2008) .......... 14

*Cat Tech LLC v. TubeMaster, Inc.*,
528 F.3d 871 (Fed. Cir. 2008) .......... 10, 17

*Cepheid v. Roche Molecular Sys., Inc.*,
No. 3:12-cv-04411-EMC, 2013 WL 184125 (N.D. Cal. Jan. 17, 2013) .......... 10, 16

*Danisco U.S. Inc. v. Novozymes A/S*,
744 F.3d 1325 (Fed. Cir. 2014) .......... 2, 8, 9

*DIRECTV, LLC v. Adeia Inc.*,
No. 3:25-cv-11048-JSC, Dkt. 71 (N.D. Cal. Oct. 6, 2026) .......... 2

*DIRECTV, LLC v. Adeia Inc.*,
No. 3:25-cv-11048-JSC (N.D. Cal.), Dkt. 65 .......... 2

*Elecs. for Imaging, Inc. v. Coyle*,
394 F.3d 1341 (Fed. Cir. 2005) .......... 17

*EMC Corp. v. Norand Corp.*,
89 F.3d 807 (Fed. Cir. 1996) .......... 15

*Eminence Capital, LLC v. Aspeon, Inc.*,
316 F.3d 1048 (9th Cir. 2003) .......... 18

*Fieldturf, Inc. v. Sw. Recreational Indus., Inc.*,
357 F.3d 1266 (Fed. Cir. 2004) .......... 18

*Gart v. Logitech, Inc.*,
254 F.3d 1334 (Fed. Cir. 2001) .......... 14

*Goodyear Tire & Rubber Co. v. Releasomers, Inc.*,
824 F.2d 953 (Fed. Cir. 1987) .......... 2, 8

*Icon Health & Fitness, Inc. v. Strava, Inc.*,
849 F.3d 1034 (Fed. Cir. 2017) .......... 17

*Innovative Therapies, Inc. v. Kinetic Concepts, Inc.*,
599 F.3d 1377 (Fed. Cir. 2010) .......... 9, 18

*Kamakana v. City & Cnty. of Honolulu*,
447 F.3d 1172 (9th Cir. 2006) .......... 16

*Larson v. Valente*,
456 U.S. 228 (1982) .......... 13

*Led Wafer Sols. LLC v. Samsung Elecs. Co.*,
No. 22-cv-04809-AMO, 2026 WL 1738113 (N.D. Cal. June 16, 2026) .......... 18

*Lee v. City of Los Angeles*,
250 F.3d 668 (9th Cir. 2001) .......... 6

*Leite v. Crane Co.*,
749 F.3d 1117 (9th Cir. 2014) .......... 6, 16, 17

*Lopez v. Smith*,
203 F.3d 1122 (9th Cir. 2000) (en banc) .......... 18

*Maya v. Centex Corp.*,
658 F.3d 1060 (9th Cir. 2011) .......... 6

*MedImmune, Inc. v. Genentech, Inc.*,
549 U.S. 118 (2007) .......... 2, 7, 10, 12

*Micron Tech., Inc. v. MOSAID Techs., Inc.*,
518 F.3d 897 (Fed. Cir. 2008) .......... 15

*Mitek Sys., Inc. v. United Servs. Auto. Ass'n*,
139 F.4th 1340 (Fed. Cir. 2025) .......... 15

*Mitek Sys., Inc. v. United Servs. Auto. Ass'n*,
34 F.4th 1334 (Fed. Cir. 2022) ..... 15

*Prasco, LLC v. Medicis Pharm. Corp.*,
537 F.3d 1329 (Fed. Cir. 2008) ..... 8, 9

*In re Qualcomm Litig.*,
No. 3:17-cv-00108-GPC-MDD, 2017 WL 5985598 (S.D. Cal. Nov. 8, 2017) ..... 9, 10, 14

*Red Hat, Inc. v. VirtaMove, Corp.*,
785 F. Supp. 3d 603 (N.D. Cal. 2025) ..... 9

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,
442 F.3d 741 (9th Cir. 2006) ..... 6

*Safe Air for Everyone v. Meyer*,
373 F.3d 1035 (9th Cir. 2004) ..... 6, 7

*SanDisk Corp. v. STMicroelectronics, Inc.*,
480 F.3d 1372 (Fed. Cir. 2007) ..... 10, 15

*SRI Int'l, Inc. v. Advanced Tech. Labs., Inc.*,
127 F.3d 1462 (Fed. Cir. 1997) ..... 14

*Teva Pharms. USA, Inc. v. Novartis Pharms. Corp.*,
482 F.3d 1330 (Fed. Cir. 2007) ..... 2, 8

*TiVo Inc. v. EchoStar Corp.*,
646 F.3d 869 (Fed. Cir. 2011) (en banc) ..... 4

*Uzuegbunam v. Preczewski*,
592 U.S. 279 (2021) ..... 13

## I. STATEMENT OF THE ISSUES TO BE DECIDED

1. Whether DISH[1] has alleged an Article III controversy as to each of the Patents-in-Suit[2] under all the circumstances, including that: (a) Adeia's[3] predecessor sued DISH's predecessor for patent infringement; (b) DISH was subsequently licensed to Adeia's patents but that license expired; (c) shortly before midnight on the day that license expired, and the day before DISH filed this lawsuit, Adeia sued DISH for patent infringement over the same product lines at issue here; and (d) Adeia publicly confirmed that it identified the ten Patents-in-Suit through its own infringement analysis of pay-television products directly comparable to those offered by DISH.

2. Whether DISH's patent-specific injuries are redressable by declarations of noninfringement and invalidity of each Patent-in-Suit.

3. Whether any well-founded reason exists to decline jurisdiction, particularly where DISH's jurisdictional showing does not require the Court to consider, interpret, or draw inferences from confidential licensing communications and where DISH's standing rests on DISH's long history with Adeia and Adeia's own public lawsuit, filings, and public representations.

4. If the Court finds it has no subject matter jurisdiction over this matter, whether DISH should be granted leave to amend.

## II. INTRODUCTION

Adeia's motion rests on a false premise: that DISH "did not get into a dispute with Adeia. It read about one." Mot. at 10.[4, 5] That statement ignores DISH's well-pleaded long history with

---

[1] "DISH" refers to Plaintiffs DISH Network L.L.C. and Sling TV L.L.C.

[2] The "Patents-in-Suit" refers collectively to U.S. Patent Nos. 10,506,010; 11,778,245; 11,110,961; 9,715,334; 8,156,528; 8,601,526; 8,640,165; 8,234,668; 12,301,922; and 8,805,418.

[3] "Adeia" refers to Defendants Adeia Inc., Adeia Guides Inc., Adeia Media Holdings Inc., Adeia Media Holdings LLC, Adeia Technologies Inc., and Adeia Media Solutions Inc.

[4] Citations to "Mot." are to the ECF-generated page numbers of Dkt. 67.

[5] Exhibits are attached to the Declaration of Zacharias Shepard filed herewith and are the subject of DISH's concurrently filed Request for Judicial Notice ("RJN").

"Colo. Compl." refers to the Complaint for Patent Infringement in *Adeia Techs. Inc. v. DISH Network Corp.*, No. 1:26-cv-01373-CNS-STV (D. Colo. Mar. 31, 2026), Dkt. 1. Exhibit A.

"Colo. Infr. Charts" refers to Dkts. 1-6 through 1-10 in *Adeia Techs. Inc. v. DISH Network Corp.*, No. 1:26-cv-01373-CNS-STV (D. Colo. Mar. 31, 2026), Dkts. 1-6–1-10. Exhibit B

Adeia's predecessors, the end of DISH's prior license, DISH's unlicensed status, and Adeia's publicly pleaded practice of suing unlicensed pay-television providers. *See* Compl. ¶¶ 21–30. It also ignores the fact that Adeia sued DISH before DISH filed this lawsuit, which—while not the sole basis for DISH's bringing this lawsuit—***confirms*** DISH's basis for jurisdiction as spelled out in the complaint.

On March 31, 2026—the day before DISH filed this action—Adeia filed a patent-infringement complaint in the District of Colorado against the DISH Plaintiffs and their affiliates accusing Sling TV, DISH Anywhere, and the Hopper platform (the same product lines at issue in Counts I-V here, *see* Compl. ¶¶ 56–64) of "continued, unauthorized use" of Adeia's video-delivery technology and seeking a finding of willfulness. Colo. Compl. ¶¶ 3, 6, Prayer ¶ B.

Adeia mentions its Colorado lawsuit against DISH once and asks the Court to disregard it because it "concerns five patents that are not at issue here." Mot. at 14. But ignoring the Colorado litigation is precisely the opposite of what the Federal Circuit's post-*MedImmune* jurisprudence commands. As Adeia acknowledges, the post-*MedImmune* all-circumstances inquiry "demands 'an affirmative act by the patentee related to the enforcement of his patent rights.'" Mot. at 4 (quoting *3M Co. v. Avery Dennison Corp.*, 673 F.3d 1372, 1377 (Fed. Cir. 2012)). A prior suit between the same parties over the same technology is ***exactly*** such an act. *See Arkema Inc. v. Honeywell Int'l, Inc.*, 706 F.3d 1351, 1357–58 (Fed. Cir. 2013); *Danisco U.S. Inc. v. Novozymes A/S*, 744 F.3d 1325, 1330–32 (Fed. Cir. 2014); *Teva Pharms. USA, Inc. v. Novartis Pharms. Corp.*, 482 F.3d 1330, 1344 (Fed. Cir. 2007) ("[R]elated litigation involving the same technology and the same parties is relevant in determining whether a justiciable controversy exists on other related patents."); *Goodyear Tire & Rubber Co. v. Releasomers, Inc.*, 824 F.2d 953, 955–56 (Fed. Cir. 1987).

That affirmative act separates this case from Adeia's case against DIRECTV on both of the

---

"DTV Order" refers to the Order re: Defendants' Motion to Dismiss Amended Complaint, *DIRECTV, LLC v. Adeia Inc.*, No. 3:25-cv-11048-JSC, Dkt. 71 (N.D. Cal. Oct. 6, 2026). Exhibit C.

"SDNY Compl." refers to the public version of the complaint in *Adeia Inc. v. DIRECTV, LLC*, No. 1:26-cv-00238-AT (S.D.N.Y. Jan. 12, 2026), Dkt. 1. Exhibit D.

"DTV Dkt. 65" refers to Adeia's Notice of Motion and Motion to Dismiss First Amended Complaint for Lack of Subject Matter Jurisdiction, filed on August 4, 2026, in *DIRECTV, LLC v. Adeia Inc.*, No. 3:25-cv-11048-JSC (N.D. Cal.), Dkt. 65. Exhibit E.

Court's holdings there. First, as to an affirmative act, DIRECTV had not been sued; in fact, Adeia told the Southern District of New York that it had "not yet determined whether filing its own district court patent infringement action against DIRECTV is warranted."[6] DTV Order at 3. Here, Adeia had determined to sue DISH, and ***actually did sue***, before DISH filed its complaint. Second, as to the Court's discretionary decision to decline jurisdiction in the *DIRECTV* case, DIRECTV sought to establish standing through inferences about communications purportedly covered by its own nondisclosure agreement with Adeia, which Adeia alleged DIRECTV breached. *Id.* at 8. DISH's jurisdictional showing, by contrast, does not require the Court to consider, interpret, or draw inferences from any confidential licensing communications; the Complaint relies solely on publicly available information—DISH's history with Adeia, its unlicensed status, Adeia's public enforcement business and filings, and Adeia's public lawsuits against DISH's close competitors. Compl. ¶¶ 39–40.

Adeia's remaining arguments concerning the *Cepheid* factors and redressability also collapse. DISH is unlicensed, Adeia's "primary business" is "licensing its intellectual property," and Adeia contends that DISH's products use Adeia's intellectual property without authorization. Compl. ¶¶ 17–19, 22; *see also* Colo. Compl. ¶¶ 3, 34–50 (listing DISH products as "Accused Instrumentalities"). Each count in DISH's complaint seeks a declaration on an identified patent for which DISH is not licensed, and a judgment on each patent eliminates DISH's exposure on that patent. That is complete redress of a patent-specific injury, not "piecemeal" relief for a licensee whose royalty obligations a judgment would not change.

The motion should therefore be denied. If the Court concludes that the complaint should plead the Colorado Action and related facts confirming the real and substantial controversy between DISH and Adeia, DISH requests leave to amend.

## III. STATEMENT OF FACTS

### A. DISH, Its Products, and Its History with Adeia

DISH provides satellite and streaming pay-television service to millions of subscribers

---

[6] Adeia ultimately ***did*** choose to file its own patent infringement action against DIRECTV in California, albeit in the Central District of California. *Adeia Media Holdings Inc. v. DIRECTV, LLC*, No. 2:26-cv-07222 (C.D. Cal. filed July 2, 2026).

through the Hopper and Joey set-top systems, the Sling TV streaming platform, the DISH Anywhere application, and the Game Finder sports feature. Compl. ¶ 20. DISH and Adeia have a long history. In 2004, Adeia's predecessor, TiVo, sued DISH's predecessor EchoStar for patent infringement over DVR technology, and the litigation lasted seven years. *Id.* ¶ 30; *see TiVo Inc. v. EchoStar Corp.*, 646 F.3d 869, 876 (Fed. Cir. 2011) (en banc). DISH previously held a patent license from Adeia's predecessor. Compl. ¶ 21; *see* Colo. Compl. ¶ 27 ("DISH Network and EchoStar previously entered into licensing arrangements with TiVo relating to DVR technology used in their products."). DISH did not renew that license before it expired. Compl. ¶ 21. As of April 1, 2026, DISH had no license to the Patents-in-Suit. Compl. ¶¶ 4, 21.

### B. Adeia's Enforcement Business and Its Public Identification of the Patents-in-Suit

Adeia's "primary business is licensing its patent portfolio and 'consequently' suing companies that refuse to take licenses." Compl. ¶ 22. It budgets more than $5 million per quarter for patent enforcement, *id.* ¶ 23, and has a well-established practice of demanding that pay-television providers license its portfolio and suing those that refuse, *id.* ¶¶ 24–29.

On December 29, 2025, DIRECTV—DISH's closest competitor—filed a declaratory-judgment action in this Court on the same ten Patents-in-Suit at issue here. *Id.* ¶ 31. Adeia responded two weeks later (on January 12, 2026) by suing DIRECTV in the Southern District of New York, where it pleaded publicly that the ten Patents-in-Suit were Adeia's selection, not DIRECTV's guess: their identification "reflected significant efforts and analysis" and resulted from "hundreds of hours" and "hundreds of pages of Adeia's confidential analysis," such that a litigant without that analysis "would have had to guess which patents to include in any declaratory relief action." *Id.* ¶¶ 36–38, 41 (quoting SDNY Compl. ¶¶ 31, 47, 50, 54). Adeia added that keeping its analysis secret had value because it "avoided lawsuit[s]." *Id.* ¶ 42. Adeia never asked to seal any part of DIRECTV's complaint, and DISH's complaint relies solely on publicly available information. *Id.* ¶¶ 39–40.

Beyond identifying these ten Patents-in-Suit for enforcement against DISH's closest competitor, Adeia also has enforced several of these patents against other pay-TV and streaming providers. Altice, for example, filed a declaratory-judgment lawsuit three days before its license with Adeia expired. *Id.* ¶ 46. In that lawsuit, Altice alleged that Adeia sent it element-by-element

claim charts and conditioned renewal of its license on those infringement allegations. *Id.* Adeia has confirmed to this Court that "Altice challenged the '010 and '526 Patents." DTV Dkt. 65 at 23 (Ex. E).

### C. Adeia Sues DISH on the Same Products Before DISH Files This Action

On March 31, 2026, Adeia Technologies Inc., Adeia Media Holdings Inc., and Adeia Media Solutions Inc.—three of the six defendants here—sued DISH Network L.L.C., Sling TV L.L.C., and five affiliates in the District of Colorado. *See generally* Colo. Compl., at 1; Mot. at 14. Adeia's Colorado complaint defines the accused products this way:

> The "Accused Instrumentalities" comprise, at least, the ***DISH TV (Hopper Platform)***, ***DISH Anywhere***, and ***Sling TV service***. The Accused Instrumentalities utilize backend streaming systems and client-side applications to deliver video content to users. These systems include processes for delivering streaming media, incorporating advertising into video playback, managing user interaction with content, and controlling playback across multiple devices . . . .

Colo. Compl. ¶ 3 (emphasis added). Adeia's complaint describes those products in detail, including the Hopper's DVR and program-guide features, *id.* ¶¶ 38–43, DISH Anywhere's streaming of live channels and Hopper recordings, *id.* ¶¶ 46–47, and Sling TV's "industry-leading dynamic ad insertion," *id.* ¶¶ 48–50. *See also* Compl. ¶¶ 20, 49–51 (identifying Sling TV, Hopper, and DISH Anywhere). Adeia's Colorado complaint alleges that Adeia's portfolio covers "dynamically generating manifests for delivering streaming media," "integrating advertising into video streams," and "presenting and interacting with content through user interfaces across different devices." Colo. Compl. ¶ 2. It notes that "[t]hrough its patent licensing program and partnerships…, Adeia's licensees have included top pay-TV providers and streamers," including "Verizon, Cox Communications, Comcast, Charter, Frontier, Altice USA (Optimum Communications), YouTube, Google TV, Paramount+, and Pluto TV," among others. *Id.* ¶ 33. Adeia's complaint also charges DISH with "continued, unauthorized use" of Adeia's technology, *id.* ¶ 6, attaches element-by-element claim charts, *see* Colo. Infr. Charts (Ex. B), and seeks findings of willfulness and enhanced damages, Colo. Compl. ¶¶ 4, 21, Prayer ¶¶ B, E. DISH filed this action on April 1, 2026, seeking declarations of noninfringement on five patents and of unpatentability under 35 U.S.C. § 101 on

eight. Compl. ¶ 1.

In Colorado, Adeia accuses the same product lines containing the same categories of functionality at issue in this action: Sling TV and DISH Anywhere for the ’010, ’418, ’245, ’961, and ’334 Patents, and the Hopper, Joey, and DISH Anywhere for the ’528, ’526, ’668, and ’922 Patents. *Id.* ¶¶ 51, 56–65 (multi-resolution content delivery, mid-stream advertisement insertion, DVR recording and playback, electronic program guides).

### D. Procedural History

Prior to Adeia’s motion, this case was related to the DIRECTV action and reassigned from Judge Seeborg. Dkts. 37, 40. This case and the Colorado Action were stayed during DISH’s Chapter 11 proceedings, and both stays were lifted in October 2026. *See, e.g.*, Dkt. 66 at 1. Adeia filed this motion on November 3, 2026. *See generally* Mot., at 1. In the *DIRECTV* action, the Court dismissed the amended complaint without prejudice, holding that DIRECTV had not plausibly alleged an injury-in-fact and that, in the alternative, the Court would decline jurisdiction. DTV Order at 5–9.[7]

## IV. LEGAL STANDARD

Adeia brings a facial challenge to this Court’s subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). Mot. at 8. Unlike a factual challenge, on a facial challenge, the Court must accept as true the allegations in DISH’s complaint and resolve all reasonable inferences in DISH’s favor. *Leite v. Crane Co.*, 749 F.3d 1117, 1121–22 (9th Cir. 2014); *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). At the pleading stage, “general factual allegations of injury resulting from the defendant’s conduct may suffice.” *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011). The Court also may consider matters subject to judicial notice, including the existence and contents of filings in other courts, though it need not resolve the truth of disputed facts recited in them. *Reyn’s Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006); *Lee v. City of Los Angeles*, 250 F.3d 668, 689–90 (9th Cir. 2001). Adeia itself relies on the Colorado

[7] DIRECTV has appealed the DTV Order. DTV Dkt. 73 (Exhibit F). Whatever the outcome of that appeal, the fact on which this opposition principally rests—Adeia’s infringement suit against DISH on the products at issue—was not part of the record in *DIRECTV*.

complaint and on filings in the DIRECTV and SDNY actions. Mot. at 7–8, 14.[8]

Whether a declaratory-judgment action presents a "case or controversy" with respect to substantive patent law is governed by Federal Circuit law. *3M*, 673 F.3d at 1377. The question this Court must resolve is "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (citation omitted). Jurisdiction is measured as of the filing of the complaint. *Benitec Austl., Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1344 (Fed. Cir. 2007).

## V. ARGUMENT

### A. Adeia's Infringement Suit Against DISH On The Same Products Is The Affirmative Act Directed At DISH That DIRECTV Never Had

Adeia's motion is built on the notion that "[t]he Complaint identifies no communication from Adeia to DISH," and that DISH "does not allege that Adeia has done any of this. It merely alleges that Adeia someday will." Mot. at 11. But as Adeia's motion admits, *id*. at 9, before DISH filed, Adeia had done something more concrete than any letter, chart, or deadline: it sued DISH for infringement over Sling TV, DISH Anywhere, and the Hopper. Because jurisdiction is measured as of the filing of the complaint, *Benitec*, 495 F.3d at 1344, what matters is that Adeia's Colorado Action already existed when DISH filed. DISH's complaint did not create the parties' dispute because that controversy already existed between Adeia and DISH. Adeia's only response is that the Colorado Action does not count because it asserts different patents. Mot. at 14. The Federal Circuit repeatedly has rejected that distinction.

#### 1. Litigation Between The Same Parties Over The Same Products And Technology Is An Affirmative Act Directed At The Declaratory Plaintiff, Even On Different Patents

In *Arkema*, Honeywell had sued Arkema abroad and counterclaimed on U.S. patents, but had never accused Arkema of infringing the two later-issued patents on which Arkema sought a declaration. 706 F.3d at 1355. The district court found no controversy over those patents. The

[8] Because Adeia elected a facial challenge, DISH relies only on its complaint and on court records subject to judicial notice. If Adeia attempts on reply to convert its motion into a factual attack by introducing evidence outside the pleadings, DISH requests an opportunity to respond with evidence of its own. *See Safe Air*, 373 F.3d at 1039.

Federal Circuit reversed, holding that a patent holder's lawsuit against a declaratory plaintiff over the same technology was an affirmative act sufficient to create a controversy over the unasserted patents, with no direct accusation required. *Id.* at 1357–58 ("Nor is it necessary that a patent holder make specific accusations against either the potential infringers or [the defendant]."). The court relied on *Teva*, which found a controversy over four patents that the patentee had never asserted, based in part on its suit against the declaratory plaintiff over a different patent covering the same product. 482 F.3d at 1344–45. It relied as well on *Goodyear*, where a pending trade secret suit between the same parties over the same technology supported jurisdiction over different claims. 824 F.2d at 955–56; *see also Danisco*, 744 F.3d at 1330–31 (reversing dismissal for lack of subject matter jurisdiction, noting that "the Supreme Court has repeatedly found the existence of an actual case or controversy even in situations in which there was no indication that the declaratory judgment defendant was preparing to enforce its legal rights").

This case falls squarely within that line of Federal Circuit authority. Adeia sued DISH on patents it says cover "dynamically generating manifests for delivering streaming media," "integrating advertising into video streams," and user interfaces "across different devices," and it accused the exact same product lines that DISH places at issue here. *Compare* Colo. Compl. ¶¶ 2–3 *with* Compl. ¶¶ 56–65. The Patents-in-Suit concern the same categories of pay-television functionality: multi-resolution content delivery, mid-stream advertisement insertion, DVR recording and playback, program guides, and content presentation across devices. Compl. ¶¶ 51, 56–64. Adeia labels its Colorado patents "unrelated," Mot. at 14, but offers no comparison of the technologies and ignores the critical inquiry: both this case and the Colorado case concern similar accused functionality found in substantially overlapping accused products.[9]

Adeia's authorities confirm the point. *Prasco* gave "minimal weight" to <u>*one*</u> prior suit because it concerned "different products covered by unrelated patents" and seven months had passed without further accusation. *Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1334, 1341 (Fed.

---

[9] DISH does not contend that the patents asserted in Colorado share a specification or priority chain with the Patents-in-Suit. Indeed, none of the Federal Circuit decisions discussed above requires overlapping patents or specifications; each looks to the patent holder's litigation conduct toward the declaratory plaintiff, its products, and its technology.

Cir. 2008). Even so, *Prasco* recognized that prior litigation between the parties is "one circumstance" in the totality. *Id.* at 1341. Here, by contrast, the suit was one day old, not seven months, and it accuses the same products. *Innovative Therapies* concerned suits "against other parties for other products," "in the absence of any act directed toward" the plaintiff, and the declaratory action was filed before the patent holder sued the declaratory plaintiff. *Innovative Therapies, Inc. v. Kinetic Concepts, Inc.*, 599 F.3d 1377, 1382–84 (Fed. Cir. 2010). Even so, the *Innovative Therapies* court held that the patent holder's history of litigation against others and general propensity to enforce its legal rights "must be considered" when assessing jurisdiction. *Id.* at 1382. And in *Red Hat*, the patentee had "taken no affirmative act whatsoever against Red Hat or [its product], either directly or indirectly"; its suit against IBM concerned a different IBM product, and the court distinguished *Danisco* because the parties had no litigation history. *Red Hat, Inc. v. VirtaMove, Corp.*, 785 F. Supp. 3d 603, 608–09 (N.D. Cal. 2025). Here, Adeia and its predecessor have sued DISH and its predecessor twice—in 2004 and again on March 31, 2026—each time while DISH was unlicensed, and the same products are at issue.

*In re Qualcomm* similarly does not help Adeia. The ITC action there carried little weight because it involved different patents and the patent holder had not otherwise directed the challenged patents at Apple. *In re Qualcomm Litig.*, No. 3:17-cv-00108-GPC-MDD, 2017 WL 5985598, at *17 n.12 (S.D. Cal. Nov. 8, 2017). Even then, the court dismissed only the "additional patents-in-suit" that Qualcomm had identified in a lengthy list, and retained jurisdiction over the patents Qualcomm had analyzed against Apple. *Id.* at *18–19. Here, Adeia's suit accuses the same products, and Adeia has publicly represented that the Patents-in-Suit are the ones its own analysis selected for pay-television products.

Adeia has effectively conceded DISH's point in this Court. To distinguish X Corp.'s declaratory action in the DIRECTV briefing, Adeia explained that it "had sued X more than three months earlier," so that X's action "arose against the backdrop of a distinct contractual dispute." DTV Dkt. 65 at 17 n.3 (Ex. E). Adeia also described to the Court the "five patents asserted against DISH" in Colorado. *Id.* at 24. If a prior contract suit against X as the declaratory plaintiff is a material circumstance to Adeia, then a prior infringement suit against DISH on the same products is more

so. Adeia cannot invoke its own suits in the *DIRECTV* action to explain why other declaratory plaintiffs are differently situated and then, in this action, ask the Court to disregard its own suit against DISH.

**2. The Controversy Over These Patents Is Immediate And Real: DISH Is Unlicensed, Continues To Offer The Accused Products, And Adeia Says That Use Is Unauthorized**

A substantial controversy exists where the patent holder "asserts rights under a patent based on certain identified ongoing or planned activity of another party, and where that party contends that it has the right to engage in the accused activity without license." *SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1381 (Fed. Cir. 2007). Adeia alleges that Sling TV, DISH Anywhere, and the Hopper make "continued, unauthorized use" of Adeia's streaming and advertising technology. Colo. Compl. ¶¶ 3–6. DISH continues to offer those products and contends it may do so without a license. Compl. ¶¶ 5, 20, 54, 66–68. That is *SanDisk* exactly. Because DISH is unlicensed, it "has reason to expect that [absent a license agreement], it is at imminent risk of being sued by Adeia for patent infringement." Compl. ¶¶ 4, 21, 67. That is "a dilemma that it was the very purpose of the Declaratory Judgment Act to ameliorate." *MedImmune*, 549 U.S. at 129 (citation omitted); *see Cat Tech LLC v. TubeMaster, Inc.*, 528 F.3d 871, 883 (Fed. Cir. 2008).

DISH and Adeia's controversy is also distinguishable from *Cepheid* and *In re Qualcomm*, on which Adeia relies, Mot. at 12. In those cases, both declaratory plaintiffs had ongoing licensing relationships with the patentee, and neither had been sued by the patent holder on the products at issue. In *Cepheid*, the patent holder sent the declaratory plaintiff a letter but identified no product and never asserted the patent central to the jurisdictional dispute. *Cepheid v. Roche Molecular Sys., Inc.*, No. 3:12-cv-04411-EMC, 2013 WL 184125, at *10–13 (N.D. Cal. Jan. 17, 2013). In *In re Qualcomm*, the court dismissed only the patents that appeared solely on a 1,975-page list. *In re Qualcomm*, 2017 WL 5985598, at *18–19. Neither case involved a patentee that had sued the declaratory plaintiff before the declaratory action was filed.

**3. Adeia's Public Filings Identify The Patents-in-Suit As The Product Of Its Own Infringement Analysis, And The Colorado Suit Shows Adeia Acting On That Analysis**

Adeia's SDNY allegations further confirm Adeia's intent to assert these patents. They

establish that the ten Patents-in-Suit are not a random sample of Adeia's portfolio but are patents that Adeia itself selected to assert against DISH's closest competitor after "hundreds of hours" of analysis. Compl. ¶¶ 37–38, 41–45. Adeia pleaded that a litigant without that analysis "would have had to guess which patents to include," and that keeping it secret "avoided lawsuit[s]." *Id.* ¶¶ 41–42. The Court credited the inference that Adeia had communicated with DIRECTV about these ten Patents-in-Suit, DTV Order at 5, but found no act directed at DIRECTV and its products. Here, Adeia's suit against DISH supplies exactly that act.

Adeia responds that the SDNY allegations "concern information provided to DIRECTV," and that "[t]he only bridge from DIRECTV to DISH is a single word, 'consequently.'" Mot. at 13. But that ignores the well-pleaded facts. DISH and DIRECTV are direct competitors offering the same categories of products—satellite set-top DVR systems and over-the-top streaming services—with the same categories of features. Compl. ¶¶ 48–51. DIRECTV publishes web pages directly comparing its products to DISH's. *Id.* ¶¶ 49–50. And Adeia's primary business is licensing its patent portfolio to pay-television providers as a class. *Id.* ¶¶ 22–29, 46–47. DISH's own history with Adeia and its predecessor—the 2004–2011 litigation, a prior license that has since ended, and DISH's unlicensed status—places DISH within that class. *Id.* ¶¶ 21–22, 30. Indeed, the bridge that Adeia says is missing is one that Adeia built itself: before DISH filed this lawsuit, it sued DISH on the same products.

### 4. The *Cepheid* Factors Are Aids, Not Elements, And On This Record They Clearly Favor DISH

The thirteen considerations that Adeia catalogs, Mot. at 9–10, are not a checklist. *3M*, 673 F.3d at 1379. By giving the *Cepheid* factors short shrift, Mot. at 15–16, Adeia assumes away the Colorado Action. When the Colorado Action is restored to the analysis, the *Cepheid* factors favor DISH.

Prior to DISH's initiation of this lawsuit, Adeia sued DISH; it charged DISH with directly and willfully infringing its patents, and it accused the same products at issue after conducting a "diligent investigation" (factors 1, 4, 10, 11, and 12—strength of language, prior litigation between the parties, identification of specific patents or products, extent of patent holder's familiarity with the products prior to suit, and timing, respectively). Colo. Compl. ¶¶ Introduction, 3, 37–50 & Prayer

¶ B. DISH's complaint alleges that Adeia has performed extensive infringement analysis on these ten Patents-in-Suit (factor 2—depth and extent of infringement analysis), Compl. ¶¶ 37–38, 43, and that Adeia has asserted several of them against DISH's competitors DIRECTV and Altice through element-by-element claim charts (factor 5), *id.* ¶ 46. Adeia's business _is_ licensing and "consequently" suing would-be licensees (factor 8—whether the patentee is a holding company with no income other than enforcing patent rights), *id.* ¶¶ 22–23, a factor Adeia concedes but writes off as generic "to every realistic patent licensor." *See* Mot. at 11. Adeia has given DISH no indication that it will refrain from asserting the Patents-in-Suit (factor 9—patent holder's refusal to give assurances that it will refrain from enforcing its patents). Compl. ¶ 55. And, lastly, nothing in the pleadings or Adeia's motion suggests that this lawsuit is a DISH-manufactured controversy (factor 13—whether communications by the plaintiff appear as an attempt to create a controversy): the controversy rests on Adeia's own public conduct, including its suit against DISH before this action was filed, and on the parties' long history and DISH's unlicensed status.

In sum, _*nearly every*_ *Cepheid* factor favors DISH; only factor 3—whether a patentee imposed a deadline to respond—arguably does not, and no single factor is dispositive. *See 3M*, 673 F.3d at 1377.

**5. The Complaint's "Will Contend" Allegations Describe Credible Threats, Not A Feigned Prediction**

Adeia argues that the complaint's allegations that "Adeia will imminently contend," Compl. ¶¶ 3, 52, 56–64, concede that Adeia has not yet charged DISH, pointing to the Court's reading of similar language in DIRECTV's amended complaint. Mot. at 11 (citing DTV Order at 6). But those allegations do not concede the absence of a controversy; they precisely underscore the imminence of a controversy. *Cf. MedImmune*, 549 U.S. at 130 ("Supreme Court jurisprudence is more rare regarding application of the Declaratory Judgment Act to situations in which the plaintiff's self-avoidance of imminent injury is coerced by threatened enforcement action of *a private party*…. Lower federal courts…have long accepted jurisdiction in such cases."). DISH's allegations describe the infringement positions that Adeia will take on each patent and product; they are not admissions that Adeia has taken none. The complaint elsewhere alleges that Adeia "has accused DIRECTV of infringing the Patents-in-Suit," that Adeia "has already performed the 'depth and extent of

infringement analysis'" on them, and that DISH offers the same categories of products. Compl. ¶¶ 43, 51, 53. Read with the judicially noticeable fact that Adeia sued DISH on those same products before DISH filed this action, DISH's allegations plausibly plead a present case or controversy as to each patent. Alternatively, if the Court reads DISH's "will contend" allegations as it read DIRECTV's, the remedy is to plead the Colorado Action and Adeia's present accusations directly, which DISH will do. *See* § V.D, *infra*.

### B. DISH's Injuries Are Patent-Specific And Fully Redressable; Adeia's Redressability Argument Attacks A Portfolio Theory That DISH Does Not Need

Adeia's redressability argument, Mot. at 13–14, is directed entirely at a "portfolio-wide" injury. DISH's complaint does not seek a declaration about Adeia's portfolio, and DISH could not practically plead noninfringement and invalidity of Adeia's thousands of patents. *Cf.* SDNY Compl. ¶ 50 ("Filing a declaratory relief action on thousands of U.S. patents would be impractical, if not impermissible…[I]t is unlikely that Adeia's own district court patent infringement action…would have included as many patents (10) as are included in DIRECTV's Declaratory Judgment Action."). Instead, each of the Complaint's thirteen counts here identifies one patent and either the DISH products that Adeia contends infringe it or specific grounds for that patent's invalidity. Compl. ¶¶ 56–64, 118–245. The complaint's reference to Adeia's portfolio describes Adeia's licensing posture, not the injury for which DISH seeks relief. *Id.* ¶ 3. DISH's injury is the uncertainty Adeia keeps hanging over each identified patent while it times enforcement to maximize its licensing leverage. Unlicensed, DISH must either stop offering products that Adeia says are unauthorized or continue offering them and accrue potential liability on each of the ten Patents-in-Suit. *Id.* ¶¶ 66–68.

A declaration on each patent redresses that injury completely as to that patent. A plaintiff need not show that a favorable decision will relieve every injury. *Larson v. Valente*, 456 U.S. 228, 243 n.15 (1982) ("[T]he relevant inquiry is whether…the plaintiff has shown an injury to himself that is likely to be redressed by a favorable decision." (cleaned up)); *see Uzuegbunam v. Preczewski*, 592 U.S. 279, 291 (2021) ("[A] single dollar often cannot provide full redress, but the ability 'to effectuate a partial remedy' satisfies the redressability requirement." (citation omitted)). The Federal Circuit applies the same principle in patent declaratory actions: a declaration on one patent is

redressable even where other patents may also stand in the plaintiff's way. *Caraco Pharm. Labs., Ltd. v. Forest Labs., Inc.*, 527 F.3d 1278, 1293 (Fed. Cir. 2008) ("The creation of such [independent] barriers to compete satisfies the causation requirement of Article III standing.").

True, Adeia almost always seeks portfolio-wide licenses. But Adeia conflates DISH's request for declaratory judgment with a request for a portfolio-wide license. And Adeia's reliance on *Apple* and *AbbVie* exposes the flaw in its position. In *Apple Inc. v. Qualcomm Inc.*, Apple lacked standing to appeal an IPR decision because it held a six-year global license and "the validity of the challenged patents would not impact Apple's ongoing payment obligations." 992 F.3d 1378, 1383–84 (Fed. Cir. 2021). *AbbVie* likewise involved a licensee whose royalty dispute under a foreign-law contract would not be resolved by a ruling on validity. *See AbbVie Inc. v. MedImmune Ltd.*, 881 F.3d 1334, 1337–40 (Fed. Cir. 2018). And the passage of *In re Qualcomm* that Adeia quotes, Mot. at 13, addressed the contract manufacturers' theory that declarations on nine patents would affect their royalty obligations under existing licenses, not Apple's own noninfringement claims. *In re Qualcomm*, 2017 WL 5985598, at *22. In each case the plaintiff's legal relationship with the patentee was fixed by a licensing obligation that a judgment would not change. DISH has no license. Its exposure on each of the ten Patents-in-Suit is direct, and a judgment on each patent ends DISH's exposure with respect to that patent. Adeia's assertion that "DISH's position is weaker" because it is unlicensed, Mot. at 19, inverts the logic of its own authorities and all but admits that Adeia, not DISH, seeks a portfolio-wide resolution.

Adeia's analogy to 35 U.S.C. § 287, Mot. at 17 (citing *Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 187 (Fed. Cir. 1994)), is likewise foreclosed. The Federal Circuit has held that the notice requirement of § 287 and the test for declaratory-judgment jurisdiction are not coextensive. *SRI Int'l, Inc. v. Advanced Tech. Labs., Inc.*, 127 F.3d 1462, 1470 (Fed. Cir. 1997); *see Gart v. Logitech, Inc.*, 254 F.3d 1334, 1345–46 (Fed. Cir. 2001) ("Thus, the requirement of a 'specific charge of infringement' set forth in *Amsted* does not mean the patentee must make an 'unqualified charge of infringement'").

### C. There Is No Well-Founded Reason To Decline Jurisdiction

The Declaratory Judgment Act provides that a court "may declare" the rights of an interested

party. 28 U.S.C. § 2201(a). A court may decline that jurisdiction only for "well-founded reasons," and when the action serves the objectives of the Act, "dismissal is rarely proper." *Capo, Inc. v. Dioptics Med. Prods., Inc.*, 387 F.3d 1352, 1355 (Fed. Cir. 2004); *Micron Tech., Inc. v. MOSAID Techs., Inc.*, 518 F.3d 897, 902 (Fed. Cir. 2008). The Act confers "unique and substantial discretion," *Mitek Sys., Inc. v. United Servs. Auto. Ass'n*, 139 F.4th 1340, 1354–55 (Fed. Cir. 2025) (citation omitted), but a decision to decline must rest on reasons independent of, and not merely restating, the jurisdictional analysis. *Mitek Sys., Inc. v. United Servs. Auto. Ass'n*, 34 F.4th 1334, 1347 (Fed. Cir. 2022). Adeia offers one reason: that the Court's DIRECTV rationale "applies here with full force." Mot. at 19. It does not.

**1. The DIRECTV Rationale—Reliance On Inferences About NDA-Covered Communications—Does Not Apply Where Standing Rests On The Patentee's Own Public Lawsuit**

The Court declined jurisdiction over DIRECTV's action for a specific reason—DIRECTV did not move to dismiss Adeia's claim for breach of the DIRECTV–Adeia nondisclosure agreement in New York, so the Court inferred that Adeia had "at least plausibly pled Plaintiff materially breached the NDA," and "it is these very plausibly pled allegations that Plaintiff relies upon in its attempt to achieve Article III standing." DTV Order at 8. Because DIRECTV sought to satisfy its burden "by relying on inferences about communications the NDA covers," permitting the action to proceed would "create an incentive structure" for violating NDAs during negotiations. *Id.* (quoting *EMC Corp. v. Norand Corp.*, 89 F.3d 807, 814 (Fed. Cir. 1996)).

That concern is absent here. DISH's standing does not depend on inferences about any confidential communication. It rests on Adeia's own lawsuit against DISH—filed on the public docket of the District of Colorado and accusing the very products at issue—and on statements Adeia chose to make in public court filings. *See* § V.A, *supra*. Unlike *DIRECTV*, DISH's jurisdictional showing does not require the Court to consider, interpret, or draw inferences from any confidential licensing communications. The complaint alleges that DISH relies solely on publicly available information, Compl. ¶ 40,[10] and the Court must accept that factual allegation on this facial motion,

[10] *SanDisk*'s observation that a patentee may "avoid the risk of a declaratory judgment action" through "a suitable confidentiality agreement," 480 F.3d at 1375 n.1, describes how a patentee can

*Leite*, 749 F.3d at 1121–22. Exercising jurisdiction over a declaratory action arising from the patent holder's own actions creates no incentive to breach any agreement.

DISH's complaint refers to Adeia's SDNY allegations to show the patents Adeia itself has identified—facts that Adeia chose to keep on the public record.[11] Adeia never sought to seal DIRECTV's complaint, Compl. ¶ 39, and it pleaded its own SDNY allegations publicly. Those choices supply no reason to close this forum to DISH.

The Court also noted in its *DIRECTV* decision that it could not ascertain DIRECTV's motivation on the record before it. DTV Order at 7–8. Here, by contrast, the Court need not speculate about anyone's motivation, because the objective public record establishes a real controversy: DISH was unlicensed; Adeia publicly identified these ten Patents-in-Suit as the product of its own analysis of pay-television products that the owner directly compares to DISH's; and, before DISH filed this action, Adeia sued DISH over the same pay-television products. Seeking relief from the "uncertainty, insecurity, and controversy" Adeia created with respect to these ten Patents-in-Suit is the core purpose of the Declaratory Judgment Act. *See Capo*, 387 F.3d at 1357 (citation omitted).

**2. Adeia's "Collusion" Theory Is Unsupported Attorney Argument**

Adeia suggests that entertaining this action "invites abuse, including potential collusion between licensees in the same industry to circumvent confidentiality restrictions." Mot. at 20. But the greater risk runs the other way: Adeia's rule would allow patent monetization entities like Adeia to conspire to defeat declaratory-judgment jurisdiction by simply invoking a confidentiality agreement with someone else. Under Adeia's logic, a party facing imminent suit could not invoke a court's jurisdiction using publicly available information if, according to the patentee, that information was subject to a confidentiality agreement between the patentee ***and a third party***. Nothing in the *Cepheid* factors or in the Federal Circuit's jurisprudence supports that framework. *See, e.g., Cepheid*, 2013 WL 184125, at *6 (listing factors including factors 5 (history of enforcing patent at issue), 6 (whether patent holder's threats induced the declaratory plaintiff to change its

---

keep negotiation communications from becoming the basis of a declaratory action. It does not suggest that a patentee who sues may wall off the other patents it has publicly identified from review.

[11] Court filings carry a strong presumption of public access. *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178–79 (9th Cir. 2006).

behavior), 8 (whether patent holder is a holding company with no income other than enforcing its patents), 9 (whether patent holder refused to give assurances it would not enforce its patents), 10 (whether patent holder has identified specific patents and products), 11 (extent of patent holder's familiarity with products in suit), and 12 (length of time after patent holder asserted infringement)).

In any event, Adeia does not allege that any collusion actually occurred, and DISH's jurisdictional showing does not depend on any confidential communications. Given Adeia's facial challenge to this Court's subject matter jurisdiction, all of the complaint's allegations must be accepted as true, *Leite*, 749 F.3d at 1121–22, including the allegation that DISH relies solely on public information, Compl. ¶ 40.

Put simply, Adeia's speculative attorney argument is not evidence. *See, e.g.*, *Icon Health & Fitness, Inc. v. Strava, Inc.*, 849 F.3d 1034, 1043 (Fed. Cir. 2017). A patent holder's fear about what *other* companies *might* do in *other* cases is not a well-founded reason to deny *this plaintiff* its day in court. *Capo*, 387 F.3d at 1355 ("The standard is objective, and it focuses on whether the patentee manifested the intention to enforce the patent, and would be reasonably expected to enforce the patent against the declaratory plaintiff.").[12]

**3. Declining Jurisdiction Would Defeat The Objectives Of The Act And Would Be An Abuse Of Discretion**

The Act provides relief for a party "who is reasonably at legal risk because of an unresolved dispute to obtain judicial resolution of that dispute without having to await the commencement of legal action by the other side." *Capo*, 387 F.3d at 1354–55 (citation omitted). DISH is at legal risk by Adeia's own account: Adeia says DISH's products make unauthorized use of its technology, has sued on five patents, and has publicly identified ten more that it selected for pay-television products. If the Court declines jurisdiction, DISH will remain exposed on the ten Patents-in-Suit indefinitely, while it continues to offer the accused products. That outcome serves none of the Act's purposes. *See Cat Tech*, 528 F.3d at 883; *Elecs. for Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1347–48 (Fed. Cir. 2005) (reversing discretionary dismissal; that a declaratory action anticipates the patent holder's suit

---

[12] Adeia's collusion hypothesis is also implausible on the pleaded facts. DISH and DIRECTV are direct competitors, Compl. ¶¶ 48–51, and Adeia itself has told this Court that the declaratory actions of DISH, Altice, and X "reflect the patent selections and litigation strategies" of each company, DTV Dkt. 65 at 17.

is one factor and does not alone justify dismissal). Adeia identifies no inconvenience, no duplicative proceeding on these ten Patents-in-Suit, and no better-positioned forum for this dispute (indeed, this is Adeia's home forum), and it does not seek transfer. Nor is this *Led Wafer*, where the court declined to retain declaratory counterclaims after the patentee dismissed its own claims and nothing remained to resolve. *Led Wafer Sols. LLC v. Samsung Elecs. Co.*, No. 22-cv-04809-AMO, 2026 WL 1738113, at *7 (N.D. Cal. June 16, 2026). Adeia is actively asserting its patents against DISH. On this record, declining jurisdiction would lack the well-founded, independent reasons the Federal Circuit requires and would be an abuse of discretion. *See Capo*, 387 F.3d at 1358.

### D. In The Alternative, DISH Requests Leave To Amend

If the Court concludes that the complaint does not adequately plead an injury-in-fact, DISH requests leave to amend. *See* Fed. R. Civ. P. 15(a)(2). Leave is to be granted "with extreme liberality," and absent prejudice or a strong showing of another *Foman* factor, there is a presumption in favor of granting it. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051–52 (9th Cir. 2003) (citation omitted); *see Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc). Jurisdictional dismissals are ordinarily without prejudice, *Fieldturf, Inc. v. Sw. Recreational Indus., Inc.*, 357 F.3d 1266, 1269 (Fed. Cir. 2004), and the Court dismissed DIRECTV's action without prejudice, DTV Order at 9.

Amendment in this case would not be futile. Every fact that DISH would add predates DISH's April 1, 2026 filing, so none raises a time-of-filing concern. *Cf. Innovative Therapies*, 599 F.3d at 1383–84. DISH's amended complaint would plead, among other things: (1) the Colorado Action, its accused products, its claim charts, and the overlap between its accused functionality and the Patents-in-Suit; (2) the timing of Adeia's suit; (3) the 2004–2011 TiVo/EchoStar litigation and the license that resolved it; (4) Adeia's infringement allegations and claim charts against Altice on the '010 and '526 Patents; (5) Adeia's statements to this Court characterizing its suit against DISH; (6) Adeia's lawsuit against DIRECTV in the Central District of California (on patents it asserts against DISH in Colorado); (7) Disney's settlement of litigation against Adeia, which included the assignment of over 300 patents to Adeia or its corporate affiliates; (8) Adeia's reported 38% increase in litigation budget, according to its SEC filings; (9) statements from Adeia executives on earnings

calls reflecting Adeia's commitment to asserting its patent rights and achieving ambitious revenue targets; and (10) Adeia's newly executed 20-year licenses with additional pay-TV providers, including Charter Communications. None of these facts depends on confidential licensing communications.

## VI. CONCLUSION

Adeia, its predecessors, and DISH have a litigation history dating back at least 20 years, and DISH's prior license has ended. DISH is not licensed to the ten Patents-in-Suit. Adeia has been involved in litigation against at least four of DISH's competitors in the past year. Public information surfaced showing that Adeia aggressively pursued DISH's closest competitor on these very patents, publicly identifying them as the product of its own infringement analysis of pay-television products. And before DISH filed this lawsuit, Adeia sued DISH over the same DISH products. That is an actual controversy. The Court should deny Adeia's motion, or, in the alternative, grant DISH leave to amend.

Dated: November 17, 2026

**BAKER BOTTS L.L.P.**

*/s/ Eliot Williams*
Eliot Williams (Cal. Bar No. 290780)
eliot.williams@bakerbotts.com
700 K Street, N.W.
Washington, D.C. 20001
Telephone: (202) 639-7700

Kurt M. Pankratz (*pro hac vice*)
kurt.pankratz@bakerbotts.com
Griffin R. Tolle (*pro hac vice*)
griffin.tolle@bakerbotts.com
2001 Ross Avenue, Suite 900
Dallas, Texas 75201
Telephone: (214) 953-6500

Ali Dhanani (*pro hac vice*)
ali.dhanani@bakerbotts.com
Brian J. Hausman (*pro hac vice*)
brian.hausman@bakerbotts.com
Zacharias Shepard (*pro hac vice*)
zach.shepard@bakerbotts.com
910 Louisiana Street
Houston, Texas 77002
Telephone: (713) 229-1234

Jamie R. Lynn (*pro hac vice*)
jamie.lynn@bakerbotts.com
700 K Street, N.W.
Washington, D.C. 20001
Telephone: (202) 639-7700

*Attorneys for Plaintiffs DISH Network L.L.C. and Sling TV L.L.C.*